## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| John Doe, | | |
| | Plaintiff, | CASE NO. 19-2193 |
| v. | | |
| Commonwealth of Pennsylvania including the Department of Human Services, Pennsylvania Employees Benefit Trust Fund, the Board of Trustees of the Pennsylvania Employees Benefit Trust Fund, and the following Trustees, in their official and individual capacities: Sharon P. Minnich, Secretary of Administration; Randy Albright, Office of the Budget; Korvin Auch, Human Resources & Management; Jay Gasdaska, Bureau of Labor Relations; Tara Long, Employee Benefits & Services; Teresa Miller, Department of Insurance; Jennifer Swails, Governor's Budget Office; Erika Swaney, Employee Benefits & Services; Brenda Warburton, Office of the Budget, David Fillman, Chairman, AFSCME Council 13; Michael Bodinsky, OPEIU Healthcare PA; Richard Caponi, AFSCME District Council 84; William Einhorn, PSCOA; Dave Henderson, AFSCME District Council 85; Tom Herman, Local 668, SEIU; Dominic Sgro, AFSCME District Council 83; Matt Yarnell, SEIU Healthcare PA; Wendell Young, IV, United Food & Commercial Workers; Unknown Defendant/John Doe Defendant Number One; Highmark Health Insurance Company; HM Health Insurance Company; Highmark Health; Highmark, Inc.; Highmark Blue Cross Blue Shield; Highmark Blue Shield; and/or Highmark, | | |
| | Defendants. | |

## FIRST AMENDED COMPLAINT

Plaintiff hereby submits and files the following First Amended Complaint pursuant to Fed. R Civ. 15(a)(1)(B):

## PARTIES

1.     Plaintiff, John Doe (hereinafter "Doe"), is a citizen and resident of the Commonwealth of Pennsylvania.  Plaintiff was granted permission to proceed anonymously and to redact his home address from the Complaint.  Plaintiff is a resident of Steelton, Dauphin County, PA 17113.

2.     The acts committed by the Commonwealth of Pennsylvania Defendants occurred at the offices of the Commonwealth of Pennsylvania, including, *inter alia*, its Department of Human Services, Office of Mental Health and Substance Abuse Services, Commonwealth Towers, 303 Walnut Street, 12th Floor, Harrisburg, PA 17101.

3.     Upon information and belief, the Pennsylvania Employees' Benefit Trust Fund ("PEBTF") was created under the authority of an Agreement and Declaration of Trust dated September 8, 1988 between the Commonwealth and the AFSCME Council 13, AFL-CIO (the "Trust Agreement") pursuant to the Commonwealth's constitutional and statutory authority for the purpose of providing employer-sponsored health plan, medical, and related benefits to employees of the Commonwealth.

4.     Upon information and belief, at all relevant times, the PEBTF Board of Trustees determines the employer-sponsored health plan, medical, and related benefits of employees of the Commonwealth, and is, either solely, or jointly with the Commonwealth, the "employer," and Highmark, with respect to the benefits, terms, conditions, and privileges of employment, specifically employer-sponsored health insurance, medical, and related benefits provided to and for Commonwealth employees and their covered beneficiaries through the PEBTF Medical Plan.

5.     Defendant the PEBTF Board of Trustees is comprised of the following Defendant Trustees, some of whom are Commonwealth representatives and others of whom are union representatives:

6.     The Union Trustees, as identified in the Spring 2017 PEBTF Benefit News, are: David Fillman, Chairman, AFSCME Council 13; Michael Bodinsky, OPEIU Healthcare PA; Richard Caponi, AFSCME District Council 84; William Einhorn, PSCOA; Dave Henderson, AFSCME District Council 85; Tom Herman, Local 668, SEIU; Dominic Sgro, AFSCME District Council 83; Matt Yarnell, SEIU Healthcare PA; and Wendell Young, IV, United Food & Commercial Workers.

7.     The Commonwealth Trustees, as identified in the Spring 2017 PEBTF Benefit News are: Sharon P. Minnich, Secretary of Administration; Randy Albright, Office of the Budget; Korvin Auch, Human Resources & Management;

Jay Gasdaska, Bureau of Labor Relations; Tara Long, Employee Benefits & Services; Teresa Miller, Department of Insurance; Jennifer Swails, Governor's Budget Office; Erika Swaney, Employee Benefits & Services; and Brenda Warburton, Office of the Budget.

8. Unknown Defendant/John Doe Defendant Number One is the individual who, in the alternative, and/or in lieu of the individual Commonwealth Defendants identified above, is responsible for the conduct alleged herein, including but not limited to making the decision to single out gender transition-related services for exclusion from Doe's employer sponsored health benefits plan.

9. Doe has worked for the Commonwealth of Pennsylvania from May 2008 through the present. Doe is a current employee of the Commonwealth's Office of Mental Health and Substance Abuse Services.

10. As set forth in more detail below, Doe was subjected to irrational and invidious state-sanctioned discrimination by the Commonwealth based on gender identity and/or expression, gender stereotyping, sex, and disability in the benefits, terms, conditions, and privileges of his employment with the Commonwealth by PEBTF and the Commonwealth. Defendants' conduct singled out transgender employees, and then expressly and categorically deprived them of coverage under the PEBTF Medical Plan for medically necessary surgery, and related treatment and care, for gender dysphoria ("GD").

11.     Defendants' conduct exacerbated Doe's existing gender dysphoria ("GD"), the surgery and treatment denied to Doe by Defendants was medically necessary, and he suffered without treatment.

12.     Defendants' conduct was motivated by stigma, bias, and bare discriminatory animus against trans people, and constitutes illegal state sanctioned discrimination based on gender identity and/or expression, gender stereotyping, sex, transgender status, and disability.

13.     The Commonwealth of Pennsylvania including Governor Wolf's Code of Conduct, written proclamations regarding LGBT non-discrimination and gender diversity, written statements regarding LGBT non-discrimination, and the Commonwealth's non-discrimination and anti-harassment policies and trainings, otherwise indicate that they do not discriminate based on gender identity or transgender status, Doe was provided non-discrimination and harassment training related thereto, and Doe knows in his role employed in Mental Health and Substance Abuse Services with the Commonwealth, that gender confirmation surgery ("GCS") for gender dysphoria ("GD") is medically necessary.

14.     Defendants, Highmark Health Insurance Company; HM Health Insurance Company; Highmark Health; Highmark, Inc.; Highmark Blue Cross Blue Shield; and/or Highmark (collectively "Highmark" or "the Highmark Defendants"), will be referred to collectively throughout as "Highmark." Highmark

is a third-party administrator of the Commonwealth of Pennsylvania's employer-sponsored health plan that offers health insurance plans to Commonwealth of Pennsylvania employees including Doe.

15.     The "Highmark Health enterprise" is described on the Highmark Defendants' website as "a diversified health and wellness system based in Pittsburgh" which "operate[s] health insurance plans" throughout Pennsylvania. Highmark is currently, and was at all relevant times, the health insurance provider for Doe, and the third-party administrator for the record employer's health benefits plan.

16.     Highmark is located at, and the acts committed by the Highmark Defendants, occurred at, Fifth Avenue Place, 120 Fifth Avenue, Pittsburgh, PA.

## ADDITIONAL ALLEGATIONS AGAINST HIGHMARK

17.     Highmark was involved in the administration of health benefits including with respect to Doe in particular, and failed to meet its own obligations under the Patient Protection and Affordable Care Act, or ACA's, non-discrimination rule, which plainly says companies like Highmark may not discriminate on the basis of gender identity.

18.     Highmark controls a substantial part of the employer-employee relationship and made a discriminatory assessment and decision with respect thereto, even in the face of a clear mandate under the ACA that companies like

Highmark may not discriminate on the basis of gender identity, Highmark did so anyway. Such discrimination harmed Doe with respect thereto and for which Highmark is liable.

19. Highmark had control over the administration of the benefits, and discriminated based on gender identity in its administration of those benefits.

20. Health insurance, or health insurance benefits, in reality are a substantial part of the employer-employee relationship today.

21. "Employer" as it is used in Title VII is sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, compensation, terms, conditions, privileges, and/or benefits – of which health insurance benefits are included – regardless of whether that party may technically be described as an employer of an aggrieved individual as that term has generally been defined by the common law.

22. Title VII also broadly applies according to its text to "any agent" of a covered employer. 42 U.S.C. § 2000e(b); see also Los Angeles Water and Power v. Manhart, 435 U.S. 702, 717 n.33 (1978).

23. As Highmark administered the plan, this clearly subjects them to liability under the ACA as there is third-party administrator ("TPA") liability under § 1557 of the ACA.

24.     Section 1557 of the ACA ultimately brings insurance companies like Highmark into this sphere by requiring that they ensure benefits are administered on a non-discriminatory basis. Highmark therefore had control here but discriminated against Doe with respect to benefits, for which Highmark is liable.

25.     As Section 1557 ultimately brings Highmark into this sphere, it cannot be said Highmark was totally divorced – or "wholly uninvolved" – here. See Tovar v. Essentia Health, 857 F.3d 771, 778 (8th Cir. 2017) (reported Circuit court decision).

26.     Highmark analyzed whether Doe was entitled to the benefits in light of the ACA non-discrimination rule – in fact, Highmark had an obligation to provide benefits on a non-discriminatory basis in light of the rule – but Highmark chose not to do so, which constitutes an act of discrimination on Highmark's part. It therefore cannot be said at this stage that Highmark was wholly uninvolved in the manner in which the plan administered benefits.

27.     Alternatively, the Highmark Defendants acceded to and acted upon the discriminatory bias of the Commonwealth Defendants.

28.     Alternatively, the Highmark Defendants are also subject to liability as the third-party administrator of the record employer's health benefits plan. The Highmark Defendants exercised significant control over an important aspect of the employment relationship, acted as the agent of the Commonwealth

Defendants such that an agency relationship between the two (2) entities existed, the Highmark Defendants personally directed or participated in the discrimination, and/or the Highmark Defendants acceded to or otherwise affected the record employer's employment practices in a discriminatory way such that it would be discriminatory if it were the third-party administrator's own discriminatory employment practice.

29.     Plaintiff's inability to secure the benefits substantially interfered with his employment (*i.e.*, to be treated consistent with gender identity – male – at work), and as a result of the conduct, Plaintiff was being required to present as someone he was not.

30.     State plans are not subject to ERISA so ERISA also in no way stood as an obstacle to Highmark's decision here.

## JURISDICTION & VENUE

31.     The conduct took place within the City of Harrisburg, Pennsylvania, at the following addresses:  303 Walnut Street, 12th Floor, 207 Finance Building, 517 Finance Building, and 150 S. 43rd Street, Suite 1.

32.     Defendant the Commonwealth of Pennsylvania (the "Commonwealth") employs more than 500 employees overall, and employs more than 500 employees in its Department of Human Services ("DHS").

33.     Defendant PEBTF provides benefits for, and Defendant PEBTF Board of Trustees has and exercises authority to determine the availability, nature, and extent of benefits for, more than 500 employees.

34.     Defendants the Commonwealth (including DHS), PEBTF, and PEBTF Board of Trustees are covered by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000, *et seq.*

35.     Defendants the Commonwealth (including DHS), PEBTF, and/or the PEBTF Board of Trustees is or are also covered by Title I of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.*

36.     All of the Defendants are also covered by the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. (the "PHRA").

37.     Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has subject-matter jurisdiction over Plaintiff's Title VII, ADA, Rehabilitation Act, ACA, and Federal Constitutional claims, as those claims present a federal question; and supplemental jurisdiction over Plaintiff's state-law claims as those claims arise out of the same set of operative facts as the Federal claims.

38.     This Court has jurisdiction over Defendants because Defendants' contacts with this state and judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the Supreme Court of the

United States in International Shoe Company v. State of Washington, 326 U.S. 310 (1945), and its progeny.

39.    Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

40.    Doe exhausted his administrative remedies and received his Notice of Right-to-Sue from the Equal Employment Opportunity Commission ("EEOC") related to this matter dated November 8, 2019.

41.    Plaintiff sufficiently exhausted administrative remedies against Highmark under Title VII, the ADA, and the PHRA because the allegations against Highmark are within the scope of the Plaintiff's EEOC charge, and/or would reasonably be expected to grow out of the charge, and/or any investigation related thereto.

42.    Upon information and belief, Highmark was on notice of Plaintiff's filing of an EEOC Charge with respect thereto, and of Plaintiff's allegations of health benefits discrimination with respect thereto and as set forth herein.

43.    Alternatively, Plaintiff also filed a complaint with the federal Department of Health and Human Services' Office of Civil Rights.  In the alternative, if necessary, Plaintiff contends equitable tolling is therefore appropriate

as against Highmark, from the time of Plaintiff's filing with this entity, on or about October 17, 2016.

44.    It should be noted that there is no statute-of-limitations bar to any allegations from December 23, 2019 through January 1, 2020, under any law for which there is a two-year statute of limitations, as such time period is within the two year time period.

45.    Plaintiff also alleges a continuing violation, under the continuing violation doctrine or continuing violation theory, for conduct occurring before December 23, 2019 – and the conduct which occurred from December 23, 2019 through January 1, 2020.

## FACTUAL BACKGROUND

### A.  Medical necessity of treatment of gender dysphoria ("GD").

46.    Doe is a male. Doe is also transgender, meaning that Doe's gender identity is male and that at birth, Doe's sex was designated or assigned as female.

47.    "Gender identity" is a clear and well-established medical concept that refers to one's sense of oneself as having a particular gender.

48.    Although many people who are designated female at birth based on external anatomy identify as girls or women, people who are transgender have a gender identity that differs from the sex that was assigned to them at birth. Transgender men are men who were assigned "female" at birth but have a male

gender identity; transgender women are women who were assigned "male" at birth but have a female gender identity.

49.     There are people who are transgender who experience feelings of incongruence between their gender identity and the sex they were assigned at birth, and experience distress as a result of that incongruence, which are symptoms of gender dysphoria ("GD"). Gender dysphoria is a serious medical condition codified in the Diagnostic and Statistical Manual of Mental Disorders 5 (DSM-5) and International Classification of Diseases (ICD-10).

50.     The widely accepted standards of care for treatment of gender dysphoria are published by the World Professional Association for Transgender Health ("WPATH"). The WPATH Standards of Care have been recognized as the authoritative standards of care by leading medical organizations, the U.S. Department of Health and Human Services, federal courts, and the Pennsylvania Department of Human Services.

51.     Under the WPATH standards, medically necessary treatment for gender dysphoria may require gender confirmation surgery ("GCS," or so-called "sex reassignment surgery").

52.     According to every leading major medical organization and the overwhelming consensus among medical experts, treatment of gender dysphoria,

including surgical procedures, are effective, safe, and medically necessary when clinically indicated to alleviate gender dysphoria.

53.     The Commonwealth of Pennsylvania provides health insurance coverage to employees, including Doe, through the Plan.  PEBTF and its Board of Trustees have the authority to determine the availability, nature, and extent of benefits under the Plan, including exclusions from coverage.

54.     Exclusions of insurance coverage for gender (or sex) affirming surgery (also known as sex or gender reassignment surgery) and related care and treatments based on a belief that such treatments are cosmetic or experimental is both prejudiced and widely recognized as having no basis in medical science. They are purely the result of discriminatory bias and invidious stereotypes about people who are transgender.

55.     Indeed, all leading medical and mental health professional associations recognize that such treatments, including surgery, are medically necessary for many individuals with gender dysphoria, and have specifically recommended that insurance should cover such treatments.

56.     Defendants' conduct in depriving transgender individuals of such medically necessary treatment caused Doe intense physical pain, body dysmorphia, suicide ideation, psychological trauma, humiliation, mental anguish, and severe emotional distress.

57.     Until January 1, 2018, the PEBTF Trustees excluded coverage under all options available under the PEBTF Medical Plan for gender (or sex) affirming surgery.

58.     The 2016 and 2017 PEBTF Medical Plans state that "no benefits will be provided for services, supplies or charges":

59.     In the 2016 Plan: "(39) For sex reassignment surgery, also known as gender reassignment surgery and charges for any treatment relating to or in connection with sex reassignment surgery, also known as gender reassignment surgery."  2016 PEBTF Medical Plan, Article IX, pp. 185-187.

60.     In the 2017 Plan: "(39) Sex Reassignment surgery and charges for any treatment relating to or in connection with sex reassignment surgery. Limitation on Exclusions.  Notwithstanding anything in this Plan to the contrary, the exclusion set forth in Section 8.0l(a)(39) and any other provision in the Plan that expressly excludes coverage for sex reassignment surgery and charges for any treatment leading to or in connection with sex reassignment surgery **shall not apply to a Member where such exclusion would be prohibited by Section 1557 of the Patient Protection and Affordable Care Act, as amended, and the regulations thereunder (45 CFR 92.207(b)) for any Member**; provided that, where such coverage is available, the coverage for any particular expense shall continue to be subject to applicable requirements of the Plan that are not based on

gender identity, including without limitation the exclusion of expenses that are experimental or investigational and the exclusion of expenses that are not medically necessary." (emphasis added).

61.    2017 PEBTF Medical Plan, Article VIII, pp. 147-150.  With slight textual differences, those exclusions were also set forth in the Summary Plan Description (or "SPD") for each annual Plan. The 2016 and 2017 PEBTF SPDs each state that all options under the Plan do not cover services, supplies or charges for:

62.    2016 SPD: "Sex reassignment surgery, also known as gender reassignment surgery and charges for any treatment leading to or in connection with sex reassignment surgery, also known as gender reassignment surgery[.]" 2016 SPD, Section 8: Services Excluded From All Medical Plan Options, p. 90.

63.    2017 SPD: "Sex reassignment surgery, also known as gender reassignment surgery, and charges for any treatment leading to or in connection with such surgery, but only if applicable law permits this exclusion for Members. Based on applicable law (as of the date of publication of this SPD), this exclusion will not apply to expenses incurred on or after January 1, 2017, although expenses will continue to be subject to Plan requirements that are not based on gender identity, such as the requirement that covered expenses be Medically Necessary

and the exclusion for Experimental and Investigative services." PEBTF Jan. 1, 2017 SPD, Section 7: Services Excluded From All Medical Plan Options, p. 85.

64. The PEBTF Medical Plans and SPDs issued before 2016 contained substantially similar exclusions of coverage.

65. It is clear that these exclusions are discriminatory, and the result of bare discriminatory animus against transgender people, on their face, as they expressly single out for exclusion and bar medically necessary treatments and services sought by transgender people because they are transgender.

66. Because of the explicit and categorical exclusion of "sex reassignment surgery, also known as gender reassignment surgery" and "any treatment relating to or in connection with sex reassignment surgery" regardless of medical necessity, cisgender employees and beneficiaries of the Plan received greater value and benefits than transgender and gender non-conforming employees received, to wit:

67. Upon information and belief, for example, cisgender individuals whose treatment providers determined that a mastectomy, lumpectomy, reconstructive chest surgery, breast reconstruction, and/or breast augmentation, is medically necessary treatment based on a diagnosis other than gender dysphoria, the PEBTF Medical Plan covered that treatment.

68.     Upon information and belief, reconstructive chest surgery, breast reconstruction, and/or breast augmentation, would be available following mastectomy, lumpectomy, or trauma.

69.     The Plan's explicit and categorical exclusion of coverage for "sex reassignment surgery, also known as gender reassignment surgery" and "treatment leading, relating or connected to such surgery" discriminated against Doe and other transgender employees on the basis of sex, including on the basis of stereotypes such as the stereotype that a man's gender identity must or should conform to the sex assigned to him at birth, which constitutes discrimination based on sex.

70.     Defendants' explicit and categorical exclusion of coverage for "sex reassignment surgery, also known as gender reassignment surgery" and treatment leading, relating or connected to such surgery, also constitutes disability discrimination as described more fully herein, inter alia, as the plan provides treatment for one condition but not for a directly comparable condition in violation of the disability discrimination laws.

**B. Gender reassignment surgery was medically necessary treatment for Doe.**

71.     Doe had been receiving gender-affirming medical and behavioral health treatment since May 2014. Initially, doe underwent behavioral health counseling, followed by hormone therapy to bring his body into alignment with

his gender. Doe continues with hormone therapy through today. Because of the explicit, categorical exclusion of coverage for transition-related care in that year's PEBTF Medical Plan, Doe had to find other sources of funding to pay for the hormone therapy that Doe's treatment providers, with Doe's agreement, input, and informed consent, determined was medically necessary and appropriate for him.

72.    Doe has been diagnosed with gender dysphoria. Doe's treatment providers, with whom Doe agrees, have determined that clinically appropriate and medically necessary individualized treatment for the gender dysphoria that Doe has been diagnosed with also includes surgery, specifically a bilateral mastectomy, to align his body with his gender.

73.    Health insurance coverage is one of the terms, conditions, and privileges of employment provided to Doe and other Commonwealth employees by the Commonwealth (including DHS), PEBTF, the PEBTF Board of Trustees, and Highmark.

74.    On or about March 3, 2017, Doe exercised his right as a PEBTF Plan beneficiary and requested a copy of the current Plan. Doe did not receive a copy of the Plan until a copy arrived by mail in an envelope postmarked April 5, 2017.

75.    The 2017 SPD and the 2017 PEBTF Medical Plan expressly refer to the exclusion of coverage for sex or gender reassignment surgery as being based on gender identity. Specifically, the categorical exclusion references, under all

Plan Options, that if it does not apply, then "expenses will continue to be subject to Plan requirements that are not based on gender identity[.]". PEBTF Summary Plan Description, Section 7: Services Excluded from All Medical Plan Options, p. 83.

76.     Upon information and belief, PEBTF Trustee and Insurance Commissioner Teresa D. Miller issued a "Notice Regarding Nondiscrimination," published in the Pennsylvania Bulletin dated April 30, 2016, stating that categorical exclusions of coverage for transition-related care violate not only federal law but also violate Pennsylvania law. This is clearly-established law. Specifically, that bulletin advised that the Pennsylvania Insurance Department expects that all health insurance policy forms under its jurisdiction will not contain any discriminatory terms, conditions or benefit provisions contrary to these State and Federal laws, including the OCR Proposed Rule, and further, that all health insurance policy forms affirmatively will include non-discriminatory terms, conditions and benefit provisions consistent with these State and Federal laws, including the OCR Proposed Rule. Thus, it was anticipated that a policy will not exclude services based on gender identity and will not contain a categorical exclusion of coverage for all health services related to gender transition, as described in the OCR Proposed Rule, and also would affirmatively provide that

medically necessary covered services will be available to a policyholder regardless of their gender identity.

77.     The Commonwealth (including DHS), PEBTF, the PEBTF Board of Trustees, and Highmark, have, therefore, deliberately, and contrary to the guidance issued by Trustee Miller, designed an intentionally discriminatory Plan in order to exclude services based on gender identity, and in order to discriminate against transgender Commonwealth employees (including DHS employees) and transgender beneficiaries of the PEBTF based on their sex, transgender status, and disability.

**C. Doe's repeated unsuccessful efforts to ascertain coverage from Highmark under the PEBTF Medical Plan for the medically necessary treatment of gender dysphoria.**

78.     During calendar year 2016, Doe was enrolled in Highmark which was identified as the best plan option available; none of the 2016 plan options had deductibles.

79.     In June and July 2016, Doe worked with his intended surgeon, Dr. Kathy Rumer, to seek prior authorization for coverage under the 2016 PEBTF Medical Plan for a subcutaneous mastectomy and related procedures to alleviate Doe's gender dysphoria. Doe paid $70.00 out-of-pocket to Dr. Rumer's office for the consultation.

80.     On or about July 19, 2016, Doe contacted a representative of Highmark to find out where Dr. Rumer's office, which is not in the Plan's provider network, should send a letter of medical necessity. Highmark's representative did not provide an address, told Doe orally by phone that the procedure (No. 19304-50) was "excluded from coverage," and gave Doe a reference number, 17426954. Doe was neither told nor provided any other information regarding any right to appeal or challenge that conclusion.

81.     Upon information and belief, on or about September 14, 2016, Dr. Rumer's office submitted a letter to Highmark explaining the medical necessity of bilateral mastectomy as treatment of gender dysphoria in particular for Doe's case.

82.     On October 17, 2016, Doe had still not received any word from Highmark. On or about that date, Doe filed a complaint with the Office of Civil Rights of the U.S. Department of Health and Human Services, asserting that PEBTF and Highmark were engaging in illegal sex discrimination. Upon information and belief, that agency did not take any action on that complaint including up to the present time for reasons unrelated to the complaint's merits.

83.     On November 14, 2016, Doe still had received no response regarding the medical necessity letter and prior authorization request that Dr. Rumer's office had submitted two (2) months earlier. A representative named Jane told Doe that Jane spoke with her supervisor, and that because the Commonwealth and/or

PEBTF do not offer these benefits, Highmark did not review the request. Jane said that Doe would not be sent a notice. Jane told Doe that she could see in the notes that someone had misinformed Doe that Doe would receive a denial letter, and offered to send Doe a letter from customer service stating that Doe was not eligible for the procedure because Doe's coverage did not offer it. Jane gave reference number I-11472595 for that call.

84.    By letter dated November 15, 2016, from "Jane S." of Highmark's "dedicated PEBTF unit," Doe was told that coverage for Procedure Codes 19304 and 15200 were excluded, and that "no review was needed" regarding this decision. Highmark also contemporaneously sent Doe its nondiscrimination statement, claiming that Highmark did not discriminate on the basis of, among other characteristics, gender identity, which was inconsistent with Highmark's very actions of overtly discriminating against Doe based on his gender identity.

85.    The open enrollment period for the 2017 Medical Plan was from October 17 to November 4, 2016. During the open enrollment period, Doe tried repeatedly to find out whether the 2017 Medical Plan would drop the discriminatory exclusion of coverage, but found no information. Nor could Doe find any information that would tell him if any competent surgeons who perform gender affirming (or reassignment) surgery would be in the Plan's network. Doe enrolled in the Plan option with the highest copays and deductibles, because it

offered Doe the best option for reimbursement for surgery to address his diagnosed gender dysphoria.

86. In a letter dated November 16, 2016, the PEBTF's Executive Director, Kathryn M. Farley, stated that PEBTF's 2017 plans would provide coverage for medically necessary gender transition-related surgery and other treatment, and that the 2017 plans would comply with the nondiscrimination requirements of the Affordable Care Act. Ms. Farley further stated that PEBTF was in the process of updating its member materials, which would be available to its members on or before January 1, 2017.

87. Doe did not receive updated materials or other information until after January 1, 2017, and to Doe's knowledge, neither did other Plan beneficiaries. Doe believes that PEBTF and its Trustees have not been acting in good faith, and Doe believes that the Trustees breached their fiduciary duty to Doe as a beneficiary.

88. On or about January 3, 2017, Doe spoke with a customer service representative of Highmark, Danny Lyons, who told Doe that the transition-related surgery that Doe's treatment providers had prescribed as medically necessary was covered under the 2017 PEBTF Medical Plan; it was not clear, at that time, whether any of the surgeons approved as in-network providers performed transition-related surgery, and that if a network provider performed the

surgery under the 2017 Plan, Doe would be responsible for an in-network deductible of $1,000.00 and Doe's Plan would cover 100% of the remaining costs of the services. If there were no in network providers that cover the surgery, then the only other option would be surgery by an out-of-network provider; if so, Doe would pay a deductible of $2,000.00 and his Plan would only pay only 70% of the approved fees for the services, which would be reimbursed to Doe. Doe was concerned it might be difficult to identify a provider, and was concerned about the increased financial expense if he had to go out-of-network.

89.     None of the in-network providers performed transition-related surgery, so Doe contacted the office of Dr. Kathy Rumer to follow up on Doe's previous consultation with them.

90.     During the rest of January and into early February 2017, Doe was in near-daily contact with Highmark and Dr. Rumer's office concerning submission of the documentation needed for pre-determination for the surgery to be performed. Upon information and belief, Highmark told Dr. Rumer's office that the pre-authorization request was not needed, even though Dr. Rumer's office explained that authorization is always needed.

91.     On or about February 7, 2017, the situation became worse when Doe was told that the exclusion was "reinstated."

92.     On February 8, 2017, a supervisor at Highmark, Desiree, told Doe that the information provided to Doe on January 3, 2017 had been correct at that time, but that two (2) days later, PEBTF sent coding to reinstate the exclusion for transition-related surgery.  A few minutes later, Theresa from PEBTF referred to "Texas" as the reason that the benefit was excluded again.

93.     On February 9, 2017, Doe received an email message from Justin Bowman, PEBTF's Senior Benefit Services Representative, and Bowman asserted that Texas was preventing gender reassignment from taking effect under the Affordable Care Act (ACA), or words to that effect.  Bowman stated that "gender reassignment surgery will continue to be excluded from the benefits" "until there is a legal decision regarding the legality of the law," "Thank you and have a good day."  Neither the Commonwealth nor PEBTF is a party to any case in Texas.

94.     In a letter dated February 22, 2017, PEBTF's Executive Director, Kathryn M. Farley, stated that because of the case in Texas, to which neither the Commonwealth nor PEBTF is a party, "the PEBTF postponed any changes to its plan benefits pending the outcome of this litigation," and would "re-assess its options and obligations after" the case.

95.     Defendants' conduct exacerbated Doe's gender dysphoria ("GD") and caused Doe to experience severe emotional distress, in the form of body dysmorphia and immense psychological trauma attendant thereto, causing Doe to

26

lose sleep, lose appetite, become physically ill, causing Doe to use sick leave from work due to illness, and causing intense physical pain, body dysmorphia, suicide ideation, embarrassment, humiliation, mental anguish, and severe emotional distress.

96.     At all times relevant hereto, Doe did not have the financial resources to pay for medically necessary surgery without the insurance sought.

97.     Doe recollects that he specifically took time off from work in or around 2017 due to what Doe felt was work-related stress and anxiety during the timeframe when the exclusion on coverage for GCS was "reinstated" to Doe's detriment.

98.     On account of his gender dysphoria and body dysmorphia, Doe did not feel comfortable using a men's restroom including at work – and instead used the handicapped restroom at all times relevant hereto.

99.     Defendants' wrongful conduct contributed to and directly affected Doe's ability to use a restroom that was consistent with his gender identity (male).

100.    Once the discriminatory exclusion was removed, Doe was able to schedule and undergo surgery in March of 2018, but with a deductible that is higher than previous Plan years.

101.    Further, the absence of insurance coverage prevented or has delayed the ability to meaningfully consult with treatment providers and consider what, if

any, other gender affirming procedures are medically necessary and appropriate for Doe.

102.    Doe developed body dysmorphia and tried extremely hard to hide any physical attributes that would identify him as someone who is transgender, because Doe feared being excluded or otherwise discriminated against including in the workplace.

103.    The distress and anxiety resulting from Defendants' conduct exacerbated Doe's gender dysphoria and greatly negatively affected his social life. Doe spent most of his time indoors and alone.  Doe experienced profound isolation and loneliness, and had thoughts of suicide.

104.    At all times relevant hereto, Doe refused to go to the beach.  For Doe, gender dysphoria is the hardest in the Spring and Summer months, and especially around each of the Summer holidays. Although Doe loves the beach, because of his dysphoria, he completely avoids it.  For similar reasons, Doe also declined invitations from friends who have pools and want Doe to come to their home and swim, or invitations to join them when they go to the Shore. Doe would have loved to participate but could not.  Doe had not taken, much less enjoyed, a vacation in years, at that time, for that very same reason, even though Doe loved the beach.

105.    The denial of coverage for the surgery that Doe needed resulted in distress from gender dysphoria. It also has caused Doe physical pain and suffering, and severe emotional distress. Because surgery was excluded, Doe had sought to find other means to alleviate, at least temporarily, the distress caused by gender dysphoria by a practice known as binding. Although binding gave Doe an appearance that temporarily alleviated the distress Doe experienced from gender dysphoria, it was extremely painful, inhibited daily activities, and has caused Doe back problems for which he has been previously required to seek chiropractic care.

106.    Binding also impaired Doe's ability to participate in a range of activities, and enjoy life's pleasures, including active sports and other recreational activities. Doe recollects declining invitations to participate in sports and recreational activities. Doe recollects being able to do something as simple, in Doe's mind, as going to the gym.

107.    For twenty-five dollars a month, employees of the Commonwealth Defendants may use any gym within a certain radius, but because of Doe's gender dysphoria and inability to secure GCS, Doe completely avoided the gym, and was not able to participate in these additional privileges of employment.

108.    The unequal terms and conditions of Doe's employment continued until January 1, 2018, and the economic damages from discrimination, as well as

non-economic damages including pain and suffering and severe emotional distress Doe experienced as a result of Defendants' mistreatment, continues through the date of this Complaint.

109. Because of Doe's employment with the Commonwealth, the Commonwealth required Doe to attend a mandatory anti-discrimination training on or about March 21, 2017 and April 18, 2017. In that training, Doe and his co-employees were told that the Commonwealth does not permit discrimination based on characteristics that include gender identity. But that is totally false. The Commonwealth and the PEBTF Board of Trustees explicitly excluded coverage for transition-related surgery and related care, which the Plan Document and Summary Plan Description explicitly states is an exclusion based on gender identity.

110. The Commonwealth's benefit exclusion is contrary to the Commonwealth's claim including in the Governor's Code of Conduct, proclamations, and other written statements, that it does not discriminate on the basis of gender identity in the workplace. The Commonwealth Defendants violated their own written code of conduct, proclamations from the Governor, and written statements from the Governor, regarding LGBT non-discrimination and gender diversity. There was no rational basis for the exclusion and it was the

result of pure discriminatory bias against trans people which was irrational and inconsistent with their own written code of conduct and related policies.

111. Doe alleges a continuing violation pursuant to the continuing violation doctrine for Doe's claims for relief set forth below.

## CLAIMS FOR RELIEF

**Count I: Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. – Sex Discrimination (Plaintiff, John Doe v. Defendants, Commonwealth of Pennsylvania including the Department of Human Services; Pennsylvania Employees Benefit Trust Fund; the Board of Trustees of the Pennsylvania Employees Benefit Trust Fund; Highmark Health Insurance Company; HM Health Insurance Company; Highmark Health; Highmark, Inc.; Highmark Blue Cross Blue Shield; Highmark Blue Shield; and/or Highmark)**

112. Each paragraph above is incorporated herein by reference.

113. The acts and omissions described above discriminate on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964.

114. The Highmark Defendants, the Commonwealth, PEBTF, and some or all of the PEBTF Trustees, engaged in the foregoing discriminatory acts and/or omissions with malice or with reckless indifference to Doe's protected rights under Title VII.

**Count II: Violation of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12112(a), et seq. – (Plaintiff, John Doe v. Defendants, Commonwealth of Pennsylvania including the Department of Human Services; Pennsylvania Employees Benefit Trust Fund; the Board of Trustees of the Pennsylvania Employees Benefit Trust Fund; Highmark Health Insurance Company; HM Health Insurance**

**Company; Highmark Health; Highmark, Inc.; Highmark Blue Cross Blue Shield; Highmark Blue Shield; and/or Highmark)**

115. Each paragraph above is incorporated herein by reference.

116. The acts and omissions mentioned above also discriminate on the basis of disability in the compensation, terms, conditions, and privileges of employment in violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), et seq.

117. Defendants are covered entities under the ADA because they are each an "employer." 42 U.S.C. § 12111(2).

118. Doe is a qualified individual under the ADA who "with or without reasonable accommodation, can perform the essential functions of the employment position that [he] holds." 42 U.S.C.S. § 12111(8).

119. Having worked for the Commonwealth since May 2008 with consistently positive employee performance evaluations, there is no dispute that Doe can perform the essential functions of his job with or without reasonable accommodation. 42 U.S.C. § 12111(8).

120. Doe has an actual and/or perceived disability which is covered under the ADA, to wit:

121. Doe has an actual physical impairment in that Doe has a biological condition plausibly of physical origin due to brain neuroanatomy, and the

formation of that brain neuroanatomy in the womb, which substantially limits the major life activities of interacting with others, social functioning, and reproducing.

122.   Doe has a record of a disability of the same – a biological condition plausibly of physical origin when Doe's brain neuroanatomy was formed in the womb before birth resulting in Doe's anatomical sex not corresponding with Doe's gender identity.

123.   GID ("Gender identity disorder") is no longer an accepted medical diagnosis and is a biased understanding of being transgender. Being trans has a physiological or physical origin and is biological in nature.

124.   Doe was perceived or regarded by Defendants as disabled in that Defendants stereotyped Doe as having a mental impairment and/or infirmity, however, being transgender is not a mental disorder. Defendants perceived or regarded Doe as limited in the major life activity of thinking, when he was not.

125.   Any exclusion of persons who are transgender from the ADA is unconstitutional as violating equal protection under the Due Process Clause of the Fifth Amendment to the United States Constitution.

126.   Alternatively, upon information and belief, Doe has an actual physical and/or mental impairment in the form of gender dysphoria ("GD"), defined as clinically significant distress associated with being transgender, which substantially limits the major life activities of concentrating, thinking, caring for

oneself, interacting with others, social and occupational functioning, reproducing, and working. Defendants exacerbated Plaintiff's gender dysphoria ("GD") as a result of their conduct described herein.

127.   The gender dysphoria Doe had was a disability under the ADA because it is a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C.S. § 12102(1). The substantial limitation on Doe's interaction with others is characterized on a regular basis by severe problems, primarily social withdrawal. The gender dysphoria Doe had was characterized by significant social withdrawal. It had substantially limited Doe's social interaction with others and prevented him from forming intimate bonds.

128.   Furthermore, the physical incongruity with Doe's gender, which was addressed by the surgery that was excluded in the PEBTF Medical Plan, caused Doe significant anxiety concerning the prospect of social settings having to use or be admitted into sex-segregated social and other settings, such as bathrooms, locker rooms, hospitals, long-term care facilities, and similar settings.

129.   Gender reassignment surgery alleviated the gender dysphoria, and alleviated the anxiety and distress that Doe felt.

130.   Defendants have discriminated against Doe based on disability by excluding coverage of medically necessary treatment, specifically gender or sex reassignment surgery and related treatment.

131.   The foregoing discriminatory acts and/or omissions were engaged in with malice or with reckless indifference to Doe's protected rights under the ADA.

**Count III: Pennsylvania Human Relations Act – Sex Discrimination –
(Plaintiff, John Doe v. Defendants, Commonwealth of Pennsylvania
including the Department of Human Services; Pennsylvania Employees
Benefit Trust Fund; the Board of Trustees of the Pennsylvania Employees
Benefit Trust Fund; Highmark Health Insurance Company; HM Health
Insurance Company; Highmark Health; Highmark, Inc.; Highmark Blue
Cross Blue Shield; Highmark Blue Shield; and/or Highmark)**

132.   Each paragraph above is incorporated herein by reference.

133.   The acts and omissions described above also violate the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq., which prohibits employers from discrimination because of the sex of any individual "with respect to compensation, ... hire, tenure, terms, conditions or privileges of employment[.]" 43 P.S. § 955(a).

**Count IV: Pennsylvania Human Relations Act –
PEBTF Trustees for Aiding and Abetting Unlawful
Sex Discrimination –
(Plaintiff, John Doe v. Defendants, Sharon P. Minnich, Secretary of
Administration; Randy Albright, Office of the Budget; Korvin Auch, Human
Resources & Management; Jay Gasdaska, Bureau of Labor Relations; Tara
Long, Employee Benefits & Services; Teresa Miller, Department of
Insurance; Jennifer Swails, Governor's Budget Office; Erika Swaney,
Employee Benefits & Services; Brenda Warburton, Office of the Budget,
David Fillman, Chairman, AFSCME Council 13; Michael Bodinsky, OPEIU
Healthcare PA; Richard Caponi, AFSCME District Council 84; William
Einhorn, PSCOA; Dave Henderson, AFSCME District Council 85; Tom
Herman, Local 668, SEIU; Dominic Sgro, AFSCME District Council 83;
Matt Yarnell, SEIU Healthcare PA; Wendell Young, IV, United Food &
Commercial Workers)**

134.    Each paragraph above is incorporated herein by reference.

135.    Upon information and belief, Defendant Sharon P. Minnich, PEBTF Trustee and Secretary of Administration; Randy Albright, Secretary of the Budget and PEBTF Trustee; Korvin Auch, Deputy Secretary of Human Resources & Management and PEBTF Trustee; Jay Gasdaska, Director of the Bureau of Labor Relations and PEBTF Trustee; Tara Long, Director of the Bureau of Employee Benefits & Services and PEBTF Trustee; Teresa D. Miller, Secretary of Insurance and PEBTF Trustee; Jennifer Swails, Special Advisor to the Secretary of the Governor's Budget Office and PEBTF Trustee; Erika Swaney, of the Office of Employee Benefits & Services and PEBTF Trustee; Brenda Warburton, Executive Deputy Secretary of the Office of the Budget and PEBTF Trustee; David Fillman, Chairman, AFSCME Council 13, a PEBTF Trustee; Michael Bodinsky, OPEIU Healthcare PA, a PEBTF Trustee; Richard Caponi, AFSCME District Council 84, a PEBTF Trustee; William Einhorn, PSCOA, a PEBTF Trustee; Dave Henderson, AFSCME District Council 85, a PEBTF Trustee; Tom Hennan, Local 668, a PEBTF Trustee; Dominic Sgro, AFSCME District Council 83, a PEBTF Trustee; Matt Yarnell, SEIU Healthcare PA, a PEBTF Trustee; and Wendell Young, IV, United Food & Commercial Workers, a PEBTF Trustee, each of whom is named as a Defendant in their official and individual capacity, voted for the exclusion and/or has implemented the exclusion.

136. Each of these Defendants' acts and/or omissions violated Section 5(e) of the PHRA by aiding, abetting, inciting, compelling or coercing the doing of unlawful discriminatory acts that violate the PHRA by the Commonwealth, by PEBTF, and/or by the PEBTF Board of Trustees, and/or by obstructing or preventing the Commonwealth, PEBTF, and/or the PEBTF Board of Trustees from complying with the provisions of the PHRA prohibiting discrimination with respect to Doe's "compensation, ... terms, conditions or privileges of employment[.]"

**Count V: Pennsylvania Human Relations Act –**
**Disability Discrimination –**
**(Plaintiff, John Doe v. Defendants, Commonwealth of Pennsylvania including the Department of Human Services; Pennsylvania Employees Benefit Trust Fund; the Board of Trustees of the Pennsylvania Employees Benefit Trust Fund; Highmark Health Insurance Company; HM Health Insurance Company; Highmark Health; Highmark, Inc.; Highmark Blue Cross Blue Shield; Highmark Blue Shield; and/or Highmark)**

137. Each paragraph above is incorporated herein by reference.

138. The acts and omissions described above also violate the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq., which prohibits employers from discrimination because of "non job-related handicap or disability" of any individual "with respect to compensation, hire, tenure, terms, conditions or privileges of employment." 43 P.S. § 955(a).

**Count VI: Pennsylvania Human Relations Act –**
**PEBTF Trustees for Aiding and Abetting Unlawful**
**Disability Discrimination –**

**(Plaintiff, John Doe v. Defendants, Sharon P. Minnich, Secretary of Administration; Randy Albright, Office of the Budget; Korvin Auch, Human Resources & Management; Jay Gasdaska, Bureau of Labor Relations; Tara Long, Employee Benefits & Services; Teresa Miller, Department of Insurance; Jennifer Swails, Governor's Budget Office; Erika Swaney, Employee Benefits & Services; Brenda Warburton, Office of the Budget, David Fillman, Chairman, AFSCME Council 13; Michael Bodinsky, OPEIU Healthcare PA; Richard Caponi, AFSCME District Council 84; William Einhorn, PSCOA; Dave Henderson, AFSCME District Council 85; Tom Herman, Local 668, SEIU; Dominic Sgro, AFSCME District Council 83; Matt Yarnell, SEIU Healthcare PA; Wendell Young, IV, United Food & Commercial Workers)**

139. Each paragraph above is incorporated herein by reference.

140. Upon information and belief, Defendant Sharon P. Minnich, PEBTF Trustee and Secretary of Administration; Randy Albright, Secretary of the Budget and PEBTF Trustee; Korvin Auch, Deputy Secretary of Human Resources & Management and PEBTF Trustee; Jay Gasdaska, Director of the Bureau of Labor Relations and PEBTF Trustee; Tara Long, Director of the Bureau of Employee Benefits & Services and PEBTF Trustee; Teresa D. Miller, Secretary of Insurance and PEBTF Trustee; Jennifer Swails, Special Advisor to the Secretary of the Governor's Budget Office and PEBTF Trustee; Erika Swaney, of the Office of Employee Benefits & Services and PEBTF Trustee; Brenda Warburton, Executive Deputy Secretary of the Office of the Budget and PEBTF Trustee; David Fillman, Chairman, AFSCME Council 13, a PEBTF Trustee; Michael Bodinsky, OPEIU Healthcare PA, a PEBTF Trustee; Richard Caponi, AFSCME District Council 84, a PEBTF Trustee; William Einhorn, PSCOA, a PEBTF Trustee; Dave Henderson,

AFSCME District Council 85, a PEBTF Trustee; Tom Hennan, Local 668, a

PEBTF Trustee; Dominic Sgro, AFSCME District Council 83, a PEBTF Trustee;

Matt Yarnell, SEIU Healthcare PA, a PEBTF Trustee; and Wendell Young, IV,

United Food & Commercial Workers, a PEBTF Trustee, each of whom is named

as a Defendant in their official and individual capacity, voted for the exclusion

and/or has implemented the exclusion.

141.  Each of these Defendants' acts and/or omissions violated Section 5(e)

of the PHRA by aiding, abetting, inciting, compelling or coercing the doing of

unlawful discriminatory acts that violate the PHRA by the Commonwealth, by

PEBTF, and/or by the PEBTF Board of Trustees, and/or by obstructing or

preventing the Commonwealth, PEBTF, and/or the PEBTF Board of Trustees

from complying with the provisions of the PHRA prohibiting discrimination with

respect to Doe's "compensation, ... terms, conditions or privileges of

employment[.]"

**Count VII: Violation of Section 504 of the Rehabilitation Act of 1973,
As Amended, 29 U.S.C. § 794, et seq.,
(Plaintiff, John Doe v. Defendants, Commonwealth of Pennsylvania
including the Department of Human Services; Pennsylvania
Employees Benefit Trust Fund; the Board of Trustees of the
Pennsylvania Employees Benefit Trust Fund)**

142.  Each paragraph above is incorporated herein by reference.

143. Defendants subjected Doe to disability discrimination with respect to the categorical exclusions contained in the 2016 and 2017 SPDs in violation of Section 504 of the Rehabilitation Act of 1973, as amended ("Section 504").

144. Upon information and belief, the Department of Human Services which employed Plaintiff, is in receipt of Federal financial assistance in the form of Federal grants, loans, and/or other contracts.

145. It is believed that the Department of Human Services, including the Department of Mental Health and Substance Abuse, is in receipt of Federal financial assistance in the form of Federal grants, loans, and/or other contracts.

**Count VIII: Violation of the Patient Protection and Affordable Care Act,**
**§ 1557, 42 U.S.C. § 18116, Sex Discrimination**
**(Plaintiff, John Doe v. Defendants, Commonwealth of Pennsylvania including the Department of Human Services; Pennsylvania Employees Benefit Trust Fund; the Board of Trustees of the Pennsylvania Employees Benefit Trust Fund; Highmark Health Insurance Company; HM Health Insurance Company; Highmark Health; Highmark, Inc.; Highmark Blue Cross Blue Shield; Highmark Blue Shield; and/or Highmark)**

146. Each paragraph above is incorporated herein by reference.

147. Defendants' conduct violated the Affordable Care Act's ("ACA's") prohibition on discrimination on account of gender identity, gender expression, gender stereotyping, and/or sex.

148. The Patient Protection and Affordable Care Act § 1557, 42 U.S.C. § 18116 ("Section 1557"), specifically Section 1557 of the ACA, bars sex

40

discrimination in any health program or activity, any part of which receives, "federal financial assistance, including credits, subsidies, or contracts of insurance" in "any program or activity that is administered by an Executive Agency;" and in any entity established under Title I of the Affordable Care Act or its amendments.  42 U.S.C. § 18116(a); 45 C.F.R. § 92.4.

149.   Section 1557 provides that "an individual shall not, on the ground prohibited under …Title IX of the Education Amendments of 1972 (20 U.S.C. 1681, et seq.)" – which prohibits discrimination "on the basis of sex" – "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."

150.   The Department of Health and Human Services ("HHS") issued final regulations pertaining to Section 1557 on May 18, 2016. 81 Federal Register 31376 (May 18, 2016). Those regulations apply to "covered entities" and prohibit discrimination on the basis of gender identity. 45 C.F.R. §§ 92.4, 92.207.

151.   The Highmark Defendants and the Commonwealth Defendants are issuers of insurance products, plans, and benefits that receive Federal financial assistance for those products, plans, and benefits, and/or also provide third-party administrator services.

152.    The Highmark Defendants and the Commonwealth Defendants are "covered entities" under 45 C.F.R. § 92.4.3.

153.    Discrimination on the basis of gender identity, transgender status, gender transition, or gender nonconformity constitutes discrimination on the basis of "sex" under Section 1557.

154.    It should be noted that there is no statute-of-limitations bar to any allegations from December 23, 2019 through January 1, 2020, under any law for which there is a two-year statute of limitations, as such time period is within the two year time period.

155.    Plaintiff also alleges a continuing violation, under the continuing violation doctrine or continuing violation theory, for conduct occurring before December 23, 2019 – and the conduct which occurred from December 23, 2019 through January 1, 2020.

**Count IX: Violation of the Patient Protection and Affordable Care Act, § 1557, 42 U.S.C. § 18116, Disability Discrimination (Plaintiff, John Doe v. Defendants, Commonwealth of Pennsylvania including the Department of Human Services; Pennsylvania Employees Benefit Trust Fund; the Board of Trustees of the Pennsylvania Employees Benefit Trust Fund; Highmark Health Insurance Company; HM Health Insurance Company; Highmark Health; Highmark, Inc.; Highmark Blue Cross Blue Shield; Highmark Blue Shield; and/or Highmark)**

156.    Each paragraph above is incorporated herein by reference.

157. The Highmark Defendants and the Commonwealth Defendants as "covered entities" under 45 C.F.R. § 92.4.3 also discriminated against Doe on the basis of actual and/or perceived disability in violation of Section 1557.

158. Section 1557 prohibits discrimination on account of "disability" with respect to Defendants as issuers of insurance products, plans, and benefits that receive Federal financial assistance.

159. It should be noted that there is no statute-of-limitations bar to any allegations from December 23, 2019 through January 1, 2020, under any law for which there is a two-year statute of limitations, as such time period is within the two year time period.

160. Plaintiff also alleges a continuing violation, under the continuing violation doctrine or continuing violation theory, for conduct occurring before December 23, 2019 – and the conduct which occurred from December 23, 2019 through January 1, 2020.

**Count X: Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, U.S. Const., Amend. XIV & 42 U.S.C. § 1983, Based on Sex (Against the Defendant Trustees, in their official and individual capacities: Sharon P. Minnich, Secretary of Administration; Randy Albright, Office of the Budget; Korvin Auch, Human Resources & Management; Jay Gasdaska, Bureau of Labor Relations; Tara Long, Employee Benefits & Services; Teresa Miller, Department of Insurance; Jennifer Swails, Governor's Budget Office; Erika Swaney, Employee Benefits & Services; Brenda Warburton, Office of the Budget, David Fillman, Chairman, AFSCME Council 13; Michael Bodinsky, OPEIU Healthcare PA; Richard Caponi, AFSCME**

**District Council 84; William Einhorn, PSCOA; Dave Henderson, AFSCME District Council 85; Tom Herman, Local 668, SEIU; Dominic Sgro, AFSCME District Council 83; Matt Yarnell, SEIU Healthcare PA; Wendell Young, IV, United Food & Commercial Workers; and Unknown Defendant/John Doe Defendant #1)**

161.   Each paragraph above is incorporated herein by reference.

162.   The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits states and state actors from discriminating against individuals based on sex, gender, gender stereotyping, gender identity, and/or gender expression.

163.   Discrimination on the basis of transgender status, gender transitioning status, and/or gender non-conformity constitutes discrimination because of sex.

164.   Defendants' categorical and irrational exclusion of gender confirmation surgery is impermissible sex-based discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.

165.   Sex is a quasi-suspect class requiring analysis under a heightened or intermediate level of scrutiny.

166.   Doe seeks monetary damages including actual economic damages and compensatory damages for severe emotional distress, pain and suffering, mental anguish, humiliation, embarrassment, from the Individual Defendants identified above, and/or against John Doe #1 who is identified as the individual responsible for enacting the exclusion otherwise.

167.   Doe sues the above Individual Defendants and/or John Doe #1 in their official capacities for equitable or injunctive relief to require the issuance of a statement of non-discrimination and commitment to insure transgender employees on an equal and non-discriminatory basis; to post and disseminate notice of the verdict in this matter as appropriate to inform Commonwealth employees about the Commonwealth's commitment to insure transgender employees on an equal and non-discriminatory basis; to hold sensitivity trainings for Commonwealth employees, including but not limited to PEBTF trustees and employees, and employees of the insurance carriers with whom PEBTF and the Commonwealth contract to provide benefits, about transgender and other gender nonconforming individuals, and other necessary training and education as appropriate.

168.   Defendants had a policy, practice, or custom of discriminating against Doe and all transgender individuals similarly situated to Doe who were seeking gender confirmation surgery.

169.   The above Individual Defendants, and/or John Doe #1, had final decision-making authority including, upon information and belief, regarding instituting, rescinding, and then re-instituting the exclusion against Doe.

**Count XI: Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, U.S. Const., Amend. XIV & 42 U.S.C. § 1983, Based on Transgender Status**

**(Against the Defendant Trustees, in their official and individual capacities: Sharon P. Minnich, Secretary of Administration; Randy Albright, Office of the Budget; Korvin Auch, Human Resources & Management; Jay Gasdaska, Bureau of Labor Relations; Tara Long, Employee Benefits & Services; Teresa Miller, Department of Insurance; Jennifer Swails, Governor's Budget Office; Erika Swaney, Employee Benefits & Services; Brenda Warburton, Office of the Budget, David Fillman, Chairman, AFSCME Council 13; Michael Bodinsky, OPEIU Healthcare PA; Richard Caponi, AFSCME District Council 84; William Einhorn, PSCOA; Dave Henderson, AFSCME District Council 85; Tom Herman, Local 668, SEIU; Dominic Sgro, AFSCME District Council 83; Matt Yarnell, SEIU Healthcare PA; Wendell Young, IV, United Food & Commercial Workers; and Unknown Defendant/John Doe Defendant #1)**

170. Each paragraph above is incorporated herein by reference.

171. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution also prohibits states and state actors from discriminating against individuals based the individual's gender identity or transgender status.

172. Defendants' categorical and irrational exclusion of gender confirmation surgery is impermissible discrimination on the basis of gender identity or transgender status in violation of the Equal Protection Clause of the Fourteenth Amendment.

173. Defendants' conduct fails under any theory of constitutional review applicable here – rational basis; rational basis-plus; heightened/intermediate scrutiny; and/or strict scrutiny.

46

174.    Discrimination on the basis of gender identity or transgender status is suspect and demands a heightened level of constitutional scrutiny because: Defendants' actions intentionally single out an insulated minority group that has historically suffered discriminatory treatment, involves an immutable trait in that gender identity is central to a trans person's core identity, and involve a group that has been relegated to a position of political powerlessness on the basis of stereotypes regarding their status, and based on a characteristic that bears no relationship whatsoever to a trans person's ability to meaningfully contribute to society.

175.    Doe seeks monetary damages including actual economic damages and compensatory damages for severe emotional distress, pain and suffering, mental anguish, humiliation, embarrassment, from the Individual Defendants identified above, and/or against John Doe #1 who is identified as the individual responsible for enacting the exclusion otherwise.

176.    Doe sues the above Individual Defendants and/or John Doe #1 in their official capacities for equitable or injunctive relief to require the issuance of a statement of non-discrimination and commitment to insure transgender employees on an equal and non-discriminatory basis; to post and disseminate notice of the verdict in this matter as appropriate to inform Commonwealth employees about the Commonwealth's commitment to insure transgender

employees on an equal and non-discriminatory basis; to hold sensitivity trainings for Commonwealth employees, including but not limited to PEBTF trustees and employees, and employees of the insurance carriers with whom PEBTF and the Commonwealth contract to provide benefits, about transgender and other gender nonconforming individuals, and other necessary training and education as appropriate.

177.   Defendants had a policy, practice, or custom of discriminating against Doe and all transgender individuals similarly situated to Doe who were seeking gender confirmation surgery.

178.   The above Individual Defendants, and/or John Doe #1, had final decision-making authority including, upon information and belief, regarding instituting, rescinding, and then re-instituting the exclusion against Doe.

**Count XII: Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, U.S. Const., Amend. XIV & 42 U.S.C. § 1983, Based on Disability**
**(Against the Defendant Trustees, in their official and individual capacities:  Sharon P. Minnich, Secretary of Administration; Randy Albright, Office of the Budget; Korvin Auch, Human Resources & Management; Jay Gasdaska, Bureau of Labor Relations; Tara Long, Employee Benefits & Services; Teresa Miller, Department of Insurance; Jennifer Swails, Governor's Budget Office; Erika Swaney, Employee Benefits & Services; Brenda Warburton, Office of the Budget, David Fillman, Chairman, AFSCME Council 13; Michael Bodinsky, OPEIU Healthcare PA; Richard Caponi, AFSCME District Council 84; William Einhorn, PSCOA; Dave Henderson, AFSCME District Council 85; Tom Herman, Local 668, SEIU; Dominic Sgro, AFSCME District Council 83; Matt Yarnell, SEIU Healthcare PA; Wendell Young, IV, United Food &**

48

**Commercial Workers; and Unknown Defendant/John Doe Defendant #1)**

179.   Each paragraph above is incorporated herein by reference.

180.   The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits states and state actors from discriminating based on disability.

181.   Defendants' categorical and irrational exclusion of gender confirmation surgery is impermissible discrimination on the basis of disability in violation of the Equal Protection Clause of the Fourteenth Amendment, and for which there was no rational basis when instituted including against Doe.

182.   Doe seeks monetary damages including actual economic damages and compensatory damages for severe emotional distress, pain and suffering, mental anguish, humiliation, embarrassment, from the Individual Defendants identified above, and/or against John Doe #1 who is identified as the individual responsible for enacting the exclusion otherwise.

183.   Doe sues the above Individual Defendants and/or John Doe #1 in their official capacities for equitable or injunctive relief to require the issuance of a statement of non-discrimination and commitment to insure transgender employees on an equal and non-discriminatory basis; to post and disseminate notice of the verdict in this matter as appropriate to inform Commonwealth employees about the Commonwealth's commitment to insure transgender

employees on an equal and non-discriminatory basis; to hold sensitivity trainings for Commonwealth employees, including but not limited to PEBTF trustees and employees, and employees of the insurance carriers with whom PEBTF and the Commonwealth contract to provide benefits, about transgender and other gender nonconforming individuals, and other necessary training and education as appropriate.

184. Defendants had a policy, practice, or custom of discriminating against Doe and all transgender individuals similarly situated to Doe, including those with gender dysphoria ("GD"), who were seeking gender confirmation surgery.

185. The above Individual Defendants, and/or John Doe #1, had final decision-making authority including, upon information and belief, regarding instituting, rescinding, and then re-instituting the exclusion against Doe.

**Count XIII: Claim Under the State Equal Rights Amendment ("ERA"), Violation of Article I, § 28 of the Pennsylvania Constitution (Plaintiff, John Doe v. Defendants, Commonwealth of Pennsylvania including the Department of Human Services, Pennsylvania Employees Benefit Trust Fund, the Board of Trustees of the Pennsylvania Employees Benefit Trust Fund, and the following Trustees, in their official and individual capacities: Sharon P. Minnich, Secretary of Administration; Randy Albright, Office of the Budget; Korvin Auch, Human Resources & Management; Jay Gasdaska, Bureau of Labor Relations; Tara Long, Employee Benefits & Services; Teresa Miller, Department of Insurance; Jennifer Swails, Governor's Budget Office; Erika Swaney, Employee Benefits & Services; Brenda Warburton, Office of the Budget, David Fillman, Chairman, AFSCME Council 13; Michael Bodinsky, OPEIU Healthcare PA; Richard Caponi, AFSCME District Council 84; William Einhorn, PSCOA; Dave Henderson, AFSCME District Council 85; Tom Herman, Local 668, SEIU; Dominic Sgro, AFSCME District Council 83; Matt Yarnell, SEIU Healthcare PA; Wendell Young, IV, United**

**Food & Commercial Workers; Unknown Defendant/John Doe Defendant Number One)**

186. Each paragraph above is incorporated herein by reference.

187. Doe asserts a claim under the State Equal Rights Amendment ("ERA"), Article I, § 28 of the Pennsylvania Constitution.

188. The ERA provides that "[e]quality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual." Pa. Const. Art. I, § 28.

**Count XIV: Claim For Violation of Equal Protection Under the Pennsylvania Constitution, Violation of Article I, § 26 of the Pennsylvania Constitution**
**(Plaintiff, John Doe v. Defendants, Commonwealth of Pennsylvania including the Department of Human Services, Pennsylvania Employees Benefit Trust Fund, the Board of Trustees of the Pennsylvania Employees Benefit Trust Fund, and the following Trustees, in their official and individual capacities: Sharon P. Minnich, Secretary of Administration; Randy Albright, Office of the Budget; Korvin Auch, Human Resources & Management; Jay Gasdaska, Bureau of Labor Relations; Tara Long, Employee Benefits & Services; Teresa Miller, Department of Insurance; Jennifer Swails, Governor's Budget Office; Erika Swaney, Employee Benefits & Services; Brenda Warburton, Office of the Budget, David Fillman, Chairman, AFSCME Council 13; Michael Bodinsky, OPEIU Healthcare PA; Richard Caponi, AFSCME District Council 84; William Einhorn, PSCOA; Dave Henderson, AFSCME District Council 85; Tom Herman, Local 668, SEIU; Dominic Sgro, AFSCME District Council 83; Matt Yarnell, SEIU Healthcare PA; Wendell Young, IV, United Food & Commercial Workers; Unknown Defendant/John Doe Defendant Number One)**

189. Each paragraph above is incorporated herein by reference.

190.   The Pennsylvania Constitution prohibits states and state actors from discriminating against individuals based on sex, gender, gender stereotyping, gender identity, transgender status, and disability.

191.   Under Pennsylvania law, discrimination on the basis of transgender status, gender transitioning status, and/or gender nonconformity constitutes discrimination because of sex.

192.   Defendants' categorical and irrational exclusion of gender confirmation surgery is impermissible discrimination based on sex, transgender status, and disability, in violation of Article I, § 26 of the Pennsylvania Constitution.

193.   Sex is a quasi-suspect class requiring analysis under a heightened or intermediate level of scrutiny.

194.   Doe seeks monetary damages including actual economic damages and compensatory damages for severe emotional distress, pain and suffering, mental anguish, humiliation, embarrassment, from the Individual Defendants identified above, and/or against John Doe #1 who is identified as the individual responsible for enacting the exclusion otherwise.

195.   Doe sues the above Individual Defendants and/or John Doe #1 in their official capacities for equitable or injunctive relief to require the issuance of a statement of non-discrimination and commitment to insure transgender employees

on an equal and non-discriminatory basis; to post and disseminate notice of the verdict in this matter as appropriate to inform Commonwealth employees about the Commonwealth's commitment to insure transgender employees on an equal and non-discriminatory basis; to hold cultural sensitivity trainings for Commonwealth employees, including but not limited to PEBTF trustees and employees, and employees of the insurance carriers with whom PEBTF and the Commonwealth contract to provide benefits, about transgender and other gender nonconforming individuals, and other necessary training and education as appropriate.

196.   Defendants had a policy, practice, or custom of discriminating against Doe and all transgender individuals similarly situated to Doe who were seeking gender confirmation surgery.

197.   The above Individual Defendants, and/or John Doe #1, had final decision-making authority including, upon information and belief, regarding instituting, rescinding, and then re-instituting the exclusion against Doe.

## REQUEST FOR RELIEF

198.     **WHEREFORE,** as a direct and proximate result of the foregoing discriminatory bias and mistreatment, Doe suffered injuries and damages and requests that the Defendants compensate or reimburse Doe for an amount in excess of $150,000.00, and which will fully and fairly compensate Doe for:

a.    Actual damages, economic damages, and consequential damages as permitted by applicable law.

b.    Compensatory damages for Doe's exacerbated gender dysphoria ("GD"), intense physical pain, body dysmorphia, suicide ideation, psychological trauma, and severe emotional distress suffered on account of the deprivation of such medically necessary treatment.

c.    Punitive damages as permitted by Title VII and/or other applicable law in an amount believed to be appropriate to punish the Commonwealth, PEBTF, the PEBTF Board of Trustees, and/or some or all of the PEBTF Trustees, the Highmark Defendants, and/or the other Defendants, for their conduct that was willful, deliberate, malicious, or deliberately indifferent to Doe's rights protected under federal and Pennsylvania law, and to deter these Defendants and other employers or their agents from engaging in such misconduct in the future.

d.    An award of reasonable attorneys' fees, reasonable expert fees, and the costs and expenses incurred in this action, pursuant to 42 U.S.C. § 1988, and/or as otherwise provided by applicable Federal and/or Pennsylvania law.

e.    Pre- and post-judgment interest.

f.      Such other relief as the Court deems just and appropriate.

g.      Doe requests equitable or injunctive relief to require the Commonwealth, PEBTF, and the PEBTF Board of Trustees to issue a statement of non-discrimination and commitment to insure transgender employees on an equal and non-discriminatory basis.

h.      Doe requests equitable or injunctive relief to require the Commonwealth, PEBTF, and the PEBTF Board of Trustees to post and disseminate notice of the verdict in this matter.

i.      Doe requests equitable or injunctive relief to require the Commonwealth, PEBTF, and the PEBTF Board of Trustees to hold sensitivity trainings for Commonwealth employees, including but not limited to PEBTF trustees and employees, and employees of the insurance carriers with whom PEBTF and the Commonwealth contract to provide benefits, about transgender and other gender nonconforming individuals, and other necessary training and education.

**JURY DEMAND**

Doe hereby requests a trial by jury of eight (8) members on all counts so triable.

Respectfully submitted,

**THE LAW OFFICES OF ERIC A. SHORE**

DATED:  07/13/2020_        _____

JUSTIN F. ROBINETTE, ESQUIRE
Attorney I.D. No. 319829
THE LAW OFFICES OF ERIC A. SHORE, P.C.
Two Penn Center
1500 JFK Boulevard, Suite 1240
Philadelphia, PA 19102
Phone: (215) 944-6121
Fax: (215) 944-6124
E-mail:  JustinR@EricShore.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I, JUSTIN F. ROBINETTE, ESQUIRE, Attorney for Plaintiff, do hereby certify that on this 13th day of JULY, 2020, Plaintiff's First Amended Complaint was filed using the Court's electronic filing system, and sent to opposing counsel of record via the electronic case filing ("ECF") system, on the date set forth below.

Respectfully submitted,

**THE LAW OFFICES OF ERIC A. SHORE, P.C.**

DATED: 07/13/2020    BY:    */s/ Justin F. Robinette ,Esquire*

                                       **JUSTIN F. ROBINETTE, ESQUIRE**
                                       Two Penn Center
                                       1500 JFK Boulevard, Suite 1240
                                       Philadelphia, PA 19102
                                       Tel:  (215) 944-6121
                                       Fax: (215) 944-6124
                                       E-mail: JustinR@ericshore.com

                                       *Attorney for Plaintiff*