**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN DOE,<br><br>                    Plaintiff,<br><br>      v.<br><br>COMMONWEALTH OF<br>PENNSYLVANIA, *et al.*,<br><br>                  Defendants. | No. 19-2193 |

**BRIEF OF PLAINTIFF IN OPPOSITION TO MOTION OF THE
HIGHMARK DEFENDANTS TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT**

Plaintiff, John Doe, by undersigned counsel, hereby submits and files the following Brief in Opposition to the Highmark Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, and states as follows:

## I.    COUNTER-STATEMENT OF THE QUESTIONS INVOLVED

1. Is Highmark liable to Plaintiff for benefits discrimination under Title VII, the Pennsylvania Human Relations Act, and the Americans with Disabilities Act?

   Suggested Answer: **YES.**

2. Should Plaintiff be regarded as having sufficiently exhausted his administrative remedies against Highmark?

   Suggested Answer: **YES.**

3.    Are Plaintiff's claims under Section 1557 of the Affordable Care Act within the statute of limitations?
Suggested Answer:  **YES.**

## II.    <u>BRIEF FACTUAL AND PROCEDURAL BACKGROUND</u>

Plaintiff is a current employee of the Commonwealth of Pennsylvania. Plaintiff is a transgender male who brings this action for damages, declaratory relief, and equitable/injunctive relief, on account of the Commonwealth of Pennsylvania's previous exclusions of gender confirmation surgery ("GCS"), and other gender-affirming care, from its employer-sponsored health plan.  Plaintiff contends that such exclusions constitute sex and disability discrimination *per se*.

Plaintiff filed the instant action on December 23, 2019, out of an abundance of caution, to meet any applicable statutes of limitations.  The exclusion of GCS, and other gender-affirming care, was lifted on January 1, 2018.  Plaintiff contends the exclusion was ultimately lifted because it was an overt form of discrimination. Plaintiff filed the present action against two (2) sets of Defendants who Plaintiff believes are responsible for the discriminatory decisions at issue which caused him harm – (1) his employer, which consist of the Commonwealth of Pennsylvania and the Department of Human Services, and relatedly, the Pennsylvania Employees' Benefit Trust Fund ("PEBFT"); as well as (2) Highmark, the insurance company or carrier with respect to the employer-sponsored health plan.  Plaintiff seeks to recover damages for the entire time period he was denied necessary medical care.

The Highmark Defendants filed a Motion to Dismiss.  The Highmark

Defendants have raised a series of arguments which Plaintiff contends, with all due

respect, are without merit, are not appropriate for resolution at the motion-to-

dismiss stage, and therefore require an extension of the page limit to sufficiently

respond.  If necessary, Plaintiff hereby respectfully moves this Court to permit

Plaintiff to file the within brief and to exceed the page limit.

## III.   ARGUMENT

### A.   Plaintiff Has Pled Viable Claims Against The Highmark Entities Under Title VII, the Pennsylvania Human Relations Act, and the Americans with Disabilities Act.

Defendants are incorrect that Highmark cannot be held liable here for its

own involvement – its own discriminatory acts – simply because Defendants argue

Highmark did not control the work performance or conduct, and did not require

participation in its health plan.  These are very particular arguments for exclusion

which are not consistent with (1) the broad language of Title VII; (2) the Supreme

Court's pronouncement on the issue, for example, in Los Angeles Water & Power

v. Manhart, 435 U.S. 702 (1978); (3) several district and Circuit court decisions,

including reported and precedential cases within this jurisdiction, on the issue; (4)

including Tovar v. Essentia Health, 857 F.3d 771 (8th Cir. 2017), which is a recent

reported Circuit court decision which is persuasive regarding the question at hand.

At the time of the alleged discrimination in this case, Highmark was legally obligated not to discriminate based on gender identity as plainly set forth under Section 1557 of the Affordable Care Act, or the ACA non-discrimination rule.  But for Highmark's involvement here the Plaintiff would not have suffered as alleged in the Complaint by being denied coverage by the Highmark Defendants on account of discrimination.  This brings Highmark into the sphere here such that it cannot be said Highmark was wholly uninvolved for purposes of liability for its own discrimination.  Highmark can be held liable for its own involvement – its own discrimination – under Title VII, the Pennsylvania Human Relations Act, and the Americans with Disabilities Act.  Highmark can also be held liable, alternatively, under an agency theory, as set forth in the Plaintiff' Complaint and explained more fully below.

Preliminarily, it is important to note that Plaintiff advances multiple arguments regarding the Highmark Defendants' liability in this case.  Plaintiff does not *only* advance the agency theory as Defendants appear to suggest, although it is true that is one of Plaintiff's arguments.

> **1.    Despite a clear mandate that Highmark not discriminate based on gender identity in the administration of benefits, Highmark still discriminated against Plaintiff anyway, and is alleged to have actually participated in or been involved in the discrimination alleged.**

First, Plaintiff clearly alleges that Highmark is responsible for its own involvement – its own discriminatory acts – in this case.  In other words, Plaintiff contends Highmark is liable for its own discrimination.  That is, Plaintiff pled a series of allegations under the heading, "Additional Allegations Against Highmark," which Defendants do not appear to directly address in their Motion to Dismiss, as follows:

. . .

17.   Highmark was involved in the administration of health benefits including with respect to Doe in particular, and failed to meet its own obligations under the Patient Protection and Affordable Care Act, or ACA's, non-discrimination rule, which plainly says companies like Highmark may not discriminate on the basis of gender identity.

18.   Highmark controls a substantial part of the employer-employee relationship and made a discriminatory assessment and decision with respect thereto, even in the face of a clear mandate under the ACA that companies like Highmark may not discriminate on the basis of gender identity, Highmark did so anyway.  Such discrimination harmed Doe with respect thereto and for which Highmark is liable.

19.   Highmark had control over the administration of the benefits, and discriminated based on gender identity in its administration of those benefits.

. . .

26.   Highmark analyzed whether Doe was entitled to the benefits in light of the ACA non-discrimination rule – in fact, Highmark had an obligation to provide benefits on a non-discriminatory basis in light of the rule – but Highmark chose not to do so, which constitutes an act of discrimination on Highmark's part.  It therefore cannot be said at this stage that Highmark was wholly uninvolved in the manner in which the plan administered benefits.

See Pltf.'s First Am. Compl., ECF No. 25, para. 17-19, 26.

The Plaintiff's First Amended Complaint does also state that "the Highmark Defendants personally directed or participated in the discrimination, and/or the Highmark Defendants acceded to or otherwise affected the record employer's employment practices in a discriminatory way such that it would be discriminatory if it were the third-party administrator's own discriminatory employment practice." See id. at para. 28.

Further, as the Highmark Defendants appear to recognize at another point in their Motion to Dismiss, although not related to the present argument, the Plaintiff is alleging a "discriminatory denial of coverage" by the Highmark Defendants themselves, including under Section 1557 of the ACA. See Highmark Defs.' Mot. to Dismiss the First Am. Compl., at ECF No. 27, p. 14. Plaintiff has implicated the conduct of Highmark itself in the discriminatory act of denying coverage for gender-confirmation surgery, on a categorical basis, for years. Highmark can be held liable for its own involvement and its own discriminatory acts under Title VII, the PHRA, and the ADA, in addition to Section 1557 of the ACA.[1]

Defendants cite a number of Supreme Court cases in a footnote which are inapposite and do not directly address the matter at hand. See Highmark Defs.'

---

[1] The arguments as to Title VII contained in Section A are incorporated by reference, and should apply with equal force, to this Court's analysis of the Plaintiff's PHRA and ADA claims.

Motion to Dismiss the First Am. Compl., ECF No. 27, p. 8, n.2.  However, it is well-recognized that the definition of "employer" as it is used in Title VII is "sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, compensation, terms, conditions, privileges, and/or benefits" regardless of whether that party may technically be "described as an employer of an aggrieved individual as that term has generally been defined by the common law."  Spirt v. Teachers Insurance & Annuity Ass'n, 691 F.2d 1054 (2d Cir. 1982), vacated on other grounds, 463 U.S. 1223 (1983). Spirt, in short, stands for the proposition that "where an employer has delegated one of its core duties to a third party ... that third party can incur liability under Title VII," which is the scenario alleged in the instant case by comparison, as well. See also Gulino v. N.Y. State Educ. Dep't, 460 F.3d 361, 377 (2d Cir. 2006) (citing Spirt, 691 F.2d at 1063)); Carparts Distribution Ctr., Inc. v. Automotive Wholesaler's Ass'n of New England, Inc., 37 F.3d 12, 17 (2d Cir. 1994); Jansson v. Stamford Health, Inc., Civil Action No. 3:16-cv-260 (CSH), 2017 WL 1289824, at *23 (D. Conn. Apr. 5, 2017) (an "interference theory" is available under Title VII "where an employer has delegated one of its core duties to a third party (e.g., administration of a retirement plan"); Los Angeles Water and Power v. Manhart, 435 U.S. 702, 717 n.33 (1978).

Defendant argues, *inter alia*, that "Doe has not . . . allege[d] that . . . the Highmark Defendants were agents of the Commonwealth with respect to Doe's employment with the Commonwealth."  Def.'s Br. in Support of Motion to Dismiss Pltf.'s Am. Compl., ECF No. 27, p. 11.  Plaintiff has specifically pled that the Highmark Defendants exercised control over a significant aspect of his employment relationship, insurance benefits.  Plaintiff's First Amended Complaint, in the instant case, appropriately tracks the case law, as the Complaint alleges that:

> [The term,] 'Employer'[,] as it is used in Title VII is sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, compensation, terms, conditions, privileges, and/or benefits – of which health insurance benefits are included – regardless of whether that party may technically be described as an employer of an aggrieved individual as that term has generally been defined by the common law."

See Pltf.'s First Am. Compl., ECF No. 25, para. 21.

Plaintiff's Complaint is also replete with allegations that the Highmark Defendants themselves had control over the administration of the insurance benefits and were responsible for the discrimination occurring here.  The factual allegations or material facts of the Complaint bear this out, as Doe clearly identifies his repeated contact with Highmark over the years, and Highmark's involvement in specifically excluding coverage for Doe over the years, despite Doe's continued protests.  Doe also alleges he was affected every day he went to work by being required to present as the gender he was not.  See id. at para. 29.

8

There is a non-discrimination rule prohibiting Highmark's discriminatory conduct, see id. at para. 18, but Highmark participated and was involved itself in discrimination anyway despite this.  Plaintiff also pointed out in the Complaint that a state insurance plan is not subject to ERISA, and therefore "ERISA also in no way stood as an obstacle to Highmark's decision here."  See id. at para. 30. Highmark had a role here in the discriminatory denial of coverage which should not be dismissed at this stage of the case.

> **2.     The case of *Tovar v. Essentia Health*, 857 F.3d 771**
> **(8th Cir. 2017) is also persuasive on the question at hand.**

The Eighth Circuit decision in Tovar v. Essentia Health, 857 F.3d 771 (8th Cir. 2017), is a reported Circuit court decision which is persuasive on the question at hand, raised in Plaintiff's Complaint specifically, but which the Highmark Defendants have not responded to specifically in their Motion to Dismiss.

In Tovar, the plaintiff brought a discrimination lawsuit against two (2) sets of defendants – her employer, and the third-party administrator that administered the plaintiff-employee's employer-sponsored health plan.  Tovar v. Essentia Health, 857 F.3d 771, 773. (8th Cir. 2017).  Specifically, the plaintiff was "a nurse practitioner who was employed by Essentia from 2010 to 2016," "Tovar's benefits as an employee of Essentia included health insurance provided through the Essentia Health Employee Medical Plan (the plan)," and "[t]he plan corresponded to an insurance policy offered to employers by HealthPartners, Inc. and was

administered either by HealthPartners, Inc. or by its subsidiary HealthPartners

Administrators, Inc. (HPAI).”  Id.  The plaintiff-employee alleged that coverage

for her transgender son’s gender-affirming care was excluded by the plan in

violation of Title VII, the state human rights act, and Section 1557 of the

Affordable Care Act.  Id.  The health insurer defendants moved to dismiss the

complaint, and the district court agreed with the defendant, on the basis that the

plaintiff had “sued the wrong defendant” under the ACA.  Id. at 777.  More

specifically, “[t]he district court reasoned that because the plan was self-funded by

Essentia (meaning that Essentia rather than the plan’s administrator was

responsible for the payment of claims) and the plan document reserved to Essentia

‘all powers and discretion necessary to administer the Plan,’ including the power to

change its terms, Tovar’s alleged injuries were not fairly traceable to or redressable

by HealthPartners, Inc. or HPAI. We disagree . . . .”  Id. at 778.  The Eighth

Circuit, on appeal, rejected the district court’s argument, and ruled for the plaintiff

on the ACA claim.  Id.

The Eighth Circuit held that,  “[a]lthough the plan document listed HPAI as

the plan administrator, it did not provide that HealthPartners, Inc. ‘has no relation

to this case,’ as the district court concluded.”  Id.  Rather, the court found that “the

plan document stated that HPAI was ‘a related organization of HealthPartners,

Inc.,’ but it did not define the exact nature of the relationship between the two

companies." Id.  And, according to Tovar, "[p]erhaps more importantly, the plan document directed beneficiaries to send claims, complaints, and appeals of claim denials to HealthPartners, Inc. [who actually administered the plan], not to HPAI. The plan document therefore does not definitively establish that HealthPartners, Inc. was wholly uninvolved in the administration of the plan. It thus appears that, at this stage in the litigation, both HealthPartners, Inc. and HPAI are properly named as defendants." Id.  In summary, the Tovar court held that, "[i]f HealthPartners, Inc. or HPAI provided Essentia with a discriminatory plan document, Tovar's alleged injuries could well be traceable to and redressable through damages by those defendants notwithstanding the fact that Essentia subsequently adopted the plan and maintained control over its terms." Id.

One final point should be made regarding Tovar.  The plaintiff in Tovar did not only bring an ACA claim, but also a Title VII claim, as well as a claim under the equivalent state-law human rights act. Id. at 773.  This is similar to the Plaintiff in the instant case.  It is notable that the Eighth Circuit in Tovar did not reject Tovar's Title VII or state-law claim on the basis that the Highmark Defendants advance herein.  Tovar actually appeared to accept the premise of the plaintiff's claim of discrimination.  However, the defendant disputed "Tovar's argument that she may sue her employer under Title VII, because there is no plausible argument that Essentia's failure to cover gender reassignment treatment

for Tovar's son amounted to discrimination against Tovar on the basis of her own sex." Id. at 776.  The Tovar court rejected the Title VII and pendent state-law claim not because there was no liability for a third-party administrator's discriminatory acts under Title VII, but because the individual sought to be insured, the child himself, was a third-party who was not within the ambit of the statute's protection.  Had the plaintiff-employee actually been discriminated against by being denied coverage for gender-affirming surgery, herself, in Tovar, Plaintiff in the within action contends the result in Tovar would have been different.  This Court should follow Tovar and, for this reason, deny the Highmark Defendants' Motion to Dismiss at this stage of the case.  Defendants do not address Tovar in their Motion to Dismiss, although Plaintiff raised Tovar in his Complaint. Further, the unreported Boyden case cited by Defendants in their Motion to Dismiss is not persuasive as Boyden does not actually address Tovar in any way, although Boyden was actually decided after Tovar.  Tovar supports the Plaintiff's position in this matter.

### 3.    The agency theory.

Plaintiff also pleads an agency theory in the Complaint, and Plaintiff does so "alternatively."  See Pltf.'s First Am. Compl., at para. 28.

In the Supreme Court of the United States case, Los Angeles Water & Power v. Manhart, 435 U.S. 702 (1978), referenced above, the defendant discriminated

against women as opposed to men in its actuarial tables, for insurance purposes, and was found to have violated Title VII on this basis.  The Supreme Court of the United States ruled that sex discrimination is not permitted in such plans, and specifically pointed to the statutory text of Title VII, at 42 U.S.C. § 2000e(b), to support its holding.  Los Angeles Water & Power v. Manhart, 435 U.S. 702, 717 n.33 (1978) (citing 42 U.S.C. § 2000e(b)).

Specifically, the Supreme Court in Manhart held that, while "Title VII and the Equal Pay Act primarily govern relations between employees and their employer, not between employees and third parties," "We do not suggest, of course, that an employer can avoid his responsibilities by delegating discriminatory programs to corporate shells."  Manhart, 435 U.S. at 717 n.33.  The Supreme Court held in Manhart that "Title VII applies to 'any agent' of a covered employer," and specifically cited to the text of Title VII at 42 U.S.C. § 2000e(b) (1970 ed., Supp. V), for this proposition.  Manhart, 435 U.S. at 717 n.33 (citing 42 U.S.C. § 2000e(b) (1970 ed., Supp. V)).

The Manhart case was also recently cited as instructive by the Supreme Court in Bostock v. Clayton County, Georgia, No. 17-1618, --- S. Ct. ---, 2020 WL 3146686 (U.S. June 15, 2020).  See Bostock v. Clayton County, Georgia, No. 17-1618, --- S. Ct. ---, 2020 WL 3146686, at *2 (U.S. June 15, 2020).  In Bostock, the Supreme Court held that all LGBT discrimination is a form of sex discrimination

as a matter of law, and that the text of Title VII should primarily control the analysis when arguments regarding exclusion from coverage are raised.  Id. Plaintiff contends the plain text of Title VII would extend to the discrimination alleged here against Highmark.

Although Defendants in the instant case cite a number of Supreme Court cases in a footnote, which are inapposite as they concern the agency theory as applied to supervisors in, for example, sexual-harassment cases, Defendants do not address the case of Los Angeles Water and Power v. Manhart raised by Plaintiff in his First Amended Complaint.  Neither do the Defendants directly address the Title VII textual argument raised by Plaintiff in the First Amended Complaint.

However, of note, Defendants do acknowledge the case of Myers v. Garfield and Johnson Enterprises, Inc., 679 F. Supp. 2d 598 (E.D. Pa. 2010), out of the Eastern District of Pennsylvania, in their Motion to Dismiss, which Plaintiff contends supports his position in this matter, and not the Defendants' position.  See Highmark Defs.' Br., at p. 8 (quoting Myers v. Garfield and Johnson Enterprises, Inc., 679 F. Supp. 2d 598, 611 (E.D. Pa. 2010)).

Specifically, Myers stands for the proposition that there are several viable theories of liability against a nominal employer, including (1) single employer, (2) joint or co-employer, (3) ostensible or apparent employer, and (4) an agency theory of liability.  Defendants reference one (1) statement about "employee conduct"

14

from Myers, but this is a vague statement cherry-picked from the Myers case, which is not the extent of Myers' holding.  See Highmark Defs.' Br., at p. 8 (quoting Myers, 679 F. Supp. 2d at 611).  Rather, Myers acknowledges that the question of control by an entity alleged to be an employer is a fact-intensive inquiry which must take account of the totality of the circumstances, in the form of several factors, rather than just one factor.  Id. at 608.  "No single factor is dispositive," "a weak showing on one factor may be offset by a strong showing on" another factor, and also "the parties' beliefs and expectations regarding the relationship between the plaintiff and defendant are also relevant."  Id. at 608 (citation omitted).

Although it is a part of the inquiry, the "day-to-day supervision of employees" is only one part of the inquiry.  Myers, 679 F. Supp. 2d at 609.  Myers acknowledges, for example, that there is actually U.S. Supreme Court precedent for the proposition that "the provision of employee benefits" is also specifically relevant to the analysis as well.  Myers, 679 F. Supp. 2d at 606 n.8 (citing Nationwide Mut. Ins. Co. v. Darden, 503 U.S. at 318, 323 (1992), and Cmty. for Creative Non–Violence v. Reid, 490 U.S. 730, 751-752 (1989)); see also Faush v. Tuesday Morning, Inc., 808 F.3d 208, 214-15 n.6 (3d Cir. 2015) (same).  This should certainly be the relevant consideration in the instant case where the gravamen of the alleged discrimination actually involves discrimination

specifically in the provision of the insurance benefits at issue.  If there is a single

factor which should be dispositive in the instant case, given the gravamen of the

Plaintiff's case, then it should be the provision of the insurance benefits at issue.

Myers further states specifically that activities ranging from "set[ting]

conditions of employment" to "control of employee records" would also be

relevant to the analysis.  Myers, 679 F. Supp. 2d at 609.  Myers explicitly

acknowledged that "set[ting] conditions of employment," for example, is itself a

factor that specifically "include[s] compensation, **benefits**, and hours."  Id. at 607

(emphasis added).  In other words, the setting of conditions is interpreted as

extending not simply to the setting of conditions of compensation or hours, but

also extends to the setting of conditions of benefits.  Id.  Further, Myers also

explicitly acknowledged that  "control of employee records" is a factor that

"include[s] payroll, **insurance**, taxes and the like."  Id. (emphasis added).  In other

words, the control over employee records is interpreted as not only extending to

payroll records, but also to insurance benefits and the like, specifically.  Myers

supports the Plaintiff's position in this matter.

Additionally, Defendants cite the case of Lantz v. Hospital of the University

of Pennsylvania, 1996 WL 442795 (E.D. Pa. July 30, 1996), and Defendants argue

that Lantz stands for the proposition that "[t]he test of agency discrimination

claims is whether the alleged agent has participated in the decision-making process

that forms the basis of the discrimination." See Def.'s Br. in Support of Motion to Dismiss Pltf.'s Am. Compl., ECF No. 27, p. 8 (citing Lantz v. Hospital of the University of Pennsylvania, Civ. Action No. 96-2671, 1996 WL 442795, at *7 (E.D. Pa. July 30, 1996). Notwithstanding the fact that Lantz is an unreported district-court decision from more than twenty years ago, nonetheless Plaintiff in the instant case, with all due respect, has clearly alleged in his First Amended Complaint that "Highmark . . . made a discriminatory assessment and decision with respect thereto, even in the face of a clear mandate under the ACA that companies like Highmark may not discriminate on the basis of gender identity, Highmark did so anyway." See Pltf.'s First Am. Compl., ECF No. 25, para. 18.

Defendants argue, related to this point, that, "In short, an agency relationship requires a finding of 'control'," but Defendants do not specify in this specific sentence, *control over what?* See Highmark Defs.' Br. in Support of Motion to Dismiss, at ECF No. 27, p. 8. It is well-recognized, as explained above in Myers, that where "one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment," it is appropriate to hold the second company liable. Myers, 679 F. Supp. 2d at 607 (quoting NLRB v. Browning-Ferris Indus. of Pa., 691 F.2d 1117, 123 (3d Cir. 1982)). And, as explained above, the Myers court found "control of the terms and conditions of employment" to specifically apply to

the provision of insurance benefits.  Myers, 679 F. Supp. 2d at 607.  Here, Plaintiff Doe's First Amended Complaint is replete with allegations of control by Highmark over the insurance benefits which Doe contends Highmark denied Doe on account of gender identity.

Defendants' further agency arguments to the contrary using inapposite sexual-harassment case law should be rejected.

The district court and Circuit court cases cited above, the Supreme Court precedent cited herein, as well as Tovar, are consistent and more in line with how an employer-employee relationship is defined by Myers in the Eastern District. The Boyden case cited by Defendants is an unreported, non-precedential decision from Michigan which is not binding on this Court.  Tovar and the Supreme Court precedent described above are also more consistent with the broad definitional text of Title VII.  Plaintiff contends that Defendants' argument is not clear in light of these authorities.  Defendants' Motion to Dismiss should be denied.

### 4. This question is not appropriate for resolution on a motion to dismiss without the benefit of discovery.

As above, the fact-intensive question regarding whether Highmark can be held liable here as the employer, as well as the nature of the relationship of the Highmark Defendants to the Commonwealth Defendants, are questions which should not be resolved against the Plaintiff, at the motion-to-dismiss stage, without the benefit of discovery into these issues.

The Complaint is replete with allegations regarding Highmark's conduct. And, as above, "the precise contours of an employment relationship can only be established by a careful factual inquiry." Myers, 679 F. Supp. 2d at 607 (citation omitted).  For example, if there is direct evidence revealed during discovery regarding Highmark's internal statements or conduct, this could directly implicate Highmark.  However, Plaintiff is not in a position currently to have access to direct evidence without discovery.

This is a concept recently clarified, for example, in a transgender discrimination case decided by the Hon. Joseph F. Leeson, of the Eastern District of Pennsylvania, in Doe v. Triangle Doughnuts, LLC, Civ. Action No. 19-5275, 2020 WL 4013409 (E.D. Pa July 16, 2020).  In Triangle Doughnuts, it was recently recognized that a discrimination plaintiff does not need to affirmatively plead all of the prima facie elements of a discrimination claim, to overcome a motion to dismiss, because if direct evidence of discrimination is discovered, for example, the plaintiff might not need to prove each of the elements of the prima facie case. Doe v. Triangle Doughnuts, LLC, Civ. Action No. 19-5275, 2020 WL 4013409, at *4 (E.D. Pa July 16, 2020).  The court in Triangle Doughnuts specifically cited Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002), and Connelly v. Lane Construction Corporation, 809 F.3d 780 (3d Cir. 2016), for this proposition. Triangle Doughnuts, 2020 WL 4013409, at *4 (citations omitted).

Although Defendants have cited only to the Twombly/ Iqbal standard, for purposes of the instant Motion, the standard for a motion to dismiss requires that "a discrimination plaintiff needs only to allege 'enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim's] necessary element[s]." Triangle Doughnuts, 2020 WL 4013409, at *4 (citing Connelly v. Lane Constr. Corp., 809 F.3d 780, 789 (3d Cir. 2016)).

In addition to direct evidence concerning Highmark which could be revealed in discovery, there may also be documents to be produced in discovery which may support Plaintiff's claims against Highmark.   For example, in Tovar, "the plan document was properly considered by the district court in ruling on the defendants' motion to dismiss." Tovar, 857 F.3d at 778.  However, Defendants have not attached the plan documents to their Motion to Dismiss, and the plan documents have not otherwise been made available to the Court at this time.  Plaintiff alleges Highmark was responsible for plan administration and the plan documents could show Highmark's involvement.

Furthermore, in Myers, the court denied the defendant-employer's motion to dismiss and stated that it considered the franchise agreement between the parties, defining the nature of their relationship, to be potentially relevant, but not decisive, on the question at hand, especially at the pleadings stage.  Myers, 679 F. Supp. 2d at 610.  More to the point, however, the Myers court specifically reasoned, in part,

that, "[a]s plaintiff has noted, 'neither defendant has produced a copy of the actual franchise agreement between Jackson Hewitt and Garfield & Johnson,'" upon which the Court could make an informed decision. Id. at 610, n.14. The Myers court further held that, while "the Standard Franchise Agreement disclaims any responsibility on Jackson Hewitt's part to train franchise employees," this "does not preclude the possibility that plaintiff will ultimately obtain evidence that Jackson Hewitt actually assumed such responsibility, as she claims it did." Id. at 610. The Myers court appeared to reason such a determination should occur after discovery.

In the instant case, the matter raised by Highmark regarding the proper entity to be sued cannot be resolved on a motion to dismiss without the benefit of discovery for similar reasons. The Highmark Defendants try to emphasize, using bold-faced type, throughout their Brief in Support of their Motion to Dismiss, that the Highmark defendants were not involved, but this is not true. The Complaint is replete with allegations against, and specifically targets the actions of, the Highmark Defendants. The Highmark Defendants' attempts to reframe and explain the allegations in the light most favorable to them should be rejected at this stage. Defendants' arguments should not be parsed out on a motion to dismiss, but Plaintiff should be given the benefit of discovery and the opportunity to prove his claims.

**5.    Holding Highmark liable under these facts is also consistent with the statutory purpose behind Title VII's broad language which is intended to eradicate employment <u>discrimination in all its forms.</u>**

Title VII uses broad language to prohibit discrimination and also broadly defines an "employer" for purposes of the Act as explained above.  This is consistent with the statutory intent or purpose of Title VII which is to bring equality of employment opportunity to all aspects of the employment relationship and to eradicate discrimination in all its forms.

The congressional objective of Title VII is to afford equality of employment opportunity to all.  The text of Title VII extends by its plain terms to all "terms, conditions, benefit, and privileges" of employment, which includes insurance benefits, as explained above.  The case law cited above by Plaintiff also speaks broadly of Title VII's application to all  "employment opportunities," which is sufficiently broad to include the allegations in the instant case.  It has been recognized that "exempting plans not actually administered by an employer would seriously impair the effectiveness of Title VII" in this regard.  <u>See, e.g., Spirt</u>, 691 F.2d at 1063.  Moreover, "the definition of 'employer,' like the rest of Title VII, is given a liberal construction in order to effectuate the statute's remedial purpose." <u>Vegh v. Gen. Elec. Co.</u>, Civ. Action No. 83-744, 1983 U.S. Dist. LEXIS 16885, *3 (E.D. Pa. May 18, 1983); <u>see also Baker v. Stuart Broad Co.</u>, 560 F.2d 389, 391 (8th Cir. 1977).

In the instant case, Plaintiff specifically alleges in his First Amended Complaint that "Plaintiff's inability to secure the benefits substantially interfered with his employment (*i.e.*, to be treated consistent with gender identity – male – at work), and as a result of the conduct, Plaintiff was being required to present as someone he was not." <u>See</u> Pltf.'s First Am. Compl., at ECF No. 25, para. 29. This is alleged to have occurred on a daily basis throughout Plaintiff's employment for years. Plaintiff further alleges in the First Amended Complaint that "[s]uch discrimination harmed Doe with respect thereto and for which Highmark is liable." <u>See id.</u> at para. 18. Ruling for the Plaintiff, and against the Defendants, on this issue, would be more consistent with the purpose and intent of Title VII's broad prohibition on discrimination, and also with the broad definition of an "employer" under the Act.

### B.   Defendants' Argument That Plaintiff Allegedly Failed to Exhaust His Title VII, PHRA, and ADA Claims, Should Be Rejected.

The Highmark Defendants' failure-to-exhaust argument regarding Plaintiff's Title VII, PHRA, and ADA Claims, is an affirmative defense which should be rejected at this stage of the case. This argument is not clear in light of Plaintiff's contention that, first, the allegations against Highmark are within the scope of the charge, or would reasonably be expected to grow out of the investigation related thereto. Second, Plaintiff alleges in the First Amended Complaint that Highmark was on notice of the EEOC Charge. Third, in the alternative, Plaintiff contends

that his claim is saved on account of the timely filing of a complaint against

Highmark, but in the wrong jurisdiction, the Department of Health and Human

services ("HHS").

Defendants argue that a defendant is required to actually be named in a

charge of discrimination brought against them in order to exhaust administrative

remedies against that defendant.   However, this is not an accurate recitation of the

law as explained more fully below.  And, Plaintiff disputes that he did not

sufficiently exhaust as against Highmark in the instant case.

It is well-recognized that failure-to-exhaust is an affirmative defense, and if

the affirmative defense is not clear, then it is not appropriate to grant dismissal on a

motion to dismiss.  See, e.g., Doe v. Triangle Doughnuts, LLC, Case No. 19-5275,

2020 WL 4013409, *7, n.16 (E.D. Pa July 16, 2020).  Triangle Doughnuts is a

recent transgender discrimination case, out of the Eastern District of Pennsylvania,

which clarifies the issue at hand.  In Triangle Doughnuts, the defendant-employer

filed a motion to dismiss and argued, among other things, that the plaintiff failed to

exhaust her administrative remedies.  The Triangle Doughnuts court rejected this

argument.  Triangle Doughnuts stands for the proposition that where an affirmative

defense, specifically an alleged failure-to-exhaust administrative remedies, is not

clear, it is not appropriate for resolution on a motion to dismiss.  See Triangle

Doughnuts, 2020 WL 4013409, *7, n.16.  See also Bethel v. Jendoco Const. Corp.,

570 F.2d 1168, 1174 (3d Cir. 1978); <u>Hanna v. United States Veterans'</u>

<u>Administration Hosp.</u>, 514 F.2d 1092, 1094 (3d Cir. 1975); <u>Gomez v. Toledo</u>, 446

U.S. 635, 640 (1980); Fed. R. Civ. P. 8(c)(1) (affirmative defenses should be

asserted by way of a responsive pleading).  For the reasons described more fully

below, it is not clear that Plaintiff failed to exhaust his administrative remedies as

against Highmark.  Plaintiff contends that he has sufficiently exhausted as to

Highmark.  For the reasons contained below, the Highmark Defendants' Motion to

Dismiss the Plaintiff's First Amended Complaint on this basis should be denied.

> **1.    The allegations of benefits discrimination against Highmark were within the scope of the charge and/or would reasonably be expected to grow out of the investigation <u>related thereto.</u>**

The Highmark Defendants do not specifically cite the proper standard for

exhaustion of administrative remedies.  It is well-recognized that "[a] Title VII

plaintiff may include in a civil complaint claims of discrimination similar or

reasonably related to those alleged in the EEOC charge," or "which can reasonably

be expected to grow out of the charge of discrimination."  <u>Fucci v. Graduate Hosp.</u>,

96 F. Supp. 310, 315 (E.D. Pa. 1997) (citations omitted).  <u>See also Guess v.</u>

<u>Philadelphia Housing Auth.</u>, 354 F. Supp. 3d 596, 600 (E.D. Pa. 2019); <u>Hicks v.</u>

<u>ABT Assoc., Inc.</u>, 572 F.2d 960, 966 (3d Cir. 1978) (quoting <u>Ostapowicz v.</u>

<u>Johnson Bronze Co.</u>, 541 F.2d 394, 398-99 (3d Cir. 1976)).  "The Third Circuit has

noted, however, that this jurisdictional requirement should be construed liberally."

Guess, 354 F. Supp. 3d at 600 (citing Glus v. G.C. Murphy Co., 562 F.2d 880, 887-88 (3d Cir. 1977), and EEOC v. Kronos Inc., 620 F.3d 287, 300 (3d Cir. 2010)).   In other words, the "administrative exhaustion requirement, however, is tempered by a fairly liberal construction given to EEOC charges." Schouten v. CSX Transp., Inc., 58 F. Supp. 2d 614, 616 (E.D. Pa. 1999).

First, Plaintiff argues that the allegations against Highmark would have been reasonably expected to grow out of the scope of the allegations contained in the Charge and the investigation related thereto.   Specifically, in the First Amended Complaint, Plaintiff specifically alleges that "Plaintiff sufficiently exhausted administrative remedies against Highmark under Title VII, the ADA, and the PHRA because the allegations against Highmark are within the scope of the Plaintiff's EEOC charge, and/or would reasonably be expected to grow out of the charge, and/or any investigation related thereto." See Pltf.'s Am. Compl., ECF No. 25, para. 41.

The same allegations contained in the EEOC Charge against the Commonwealth Defendants would in actuality support the same claim of discrimination against the Highmark Defendants, based on the same exact facts, and the same exact theory.   The gravamen of the Plaintiff's case is that both sets of Defendants denied coverage for gender confirmation surgery on a categorical basis for many years constituting discrimination *per se*.   Highmark perpetrated the

discrimination described in the Plaintiff's EEOC Charge.  Just because Highmark

was not actually contained as a respondent in the caption of the EEOC Charge, this

does not mean that the body or scope of the charge did not reach Highmark's

conduct, which it did.  Furthermore, an investigation into the allegations would

have revealed Highmark's involvement.

>           **2.      Plaintiff alleges, and Highmark does not deny, that
>                      Highmark was on notice of Plaintiff's EEOC claim.**

Second, in addition to being within the scope of the charge, and/or any

investigation which would reasonably be expected to grow out of the charge,

Plaintiff also alleges in the First Amended Complaint that Highmark was on notice

of the EEOC Charge.  More specifically, Plaintiff alleges, "Upon information and

belief, Highmark was on notice of Plaintiff's filing of an EEOC Charge with

respect thereto, and of Plaintiff's allegations of health benefits discrimination with

respect thereto and as set forth herein."  See Pltf.'s Am. Compl., ECF No. 25, para.

42.

The Eastern District of Pennsylvania's recent decision in Owens-Presley v.

MCD Pizza, Inc., No. 14-6002, 2015 WL 569167 (E.D. Pa. Feb. 10, 2015), is

instructive.  In Owens-Presley, the plaintiff-employee named the franchise, MCD

Pizza, Inc., in its EEOC Charge.  However, the plaintiff-employee did not specifically

name Domino's Pizza, Inc., as a second respondent, in the plaintiff's EEOC Charge.

In Owens-Presley, the Hon. Wendy Beetlestone, of the Eastern District of

27

Pennsylvania, held that the defendant, Domino's Pizza's, argument that it "should be dismissed from the complaint because it was not named in the administrative charge must . . . fail." Owens-Presley v. MCD Pizza, Inc., No. 14-6002, 2015 WL 569167, *2 (E.D. Pa. Feb. 10, 2015) (Beetlestone, J.).

The court in Owens-Presley recognized that there is "an exception to the naming requirement 'when demanding full and technical compliance would have no relation to the purposes for requiring those procedures in the first instance.'" Id. (citing Schafer v. Bd. of Educ. of the Sch. Dist. of Pittsburgh, 903 F.2d 245, 251-52 (3d Cir. 1990) (recognizing an exception to the naming requirement "when the unnamed party received notice and when there is a shared commonality of interest with the named party")).[2]

The court pointed out in Owens-Presley that "[t]he purpose of the naming requirement is to give notice to the charged party and provide an avenue for voluntary compliance without resort to litigation." Id. (citing Glus, 562 F.2d at 888). In Owens-Presley, the court held that "[w]hether Domino's Inc. received notice of the administrative charge and the nature of its relationship with The Broad Street operation are matters to be explored in discovery." Owens-Presley, 2015 WL 569167 at *2. See also Baranek v. Kelly, 630 F. Supp. 1107, 1112 (D. Mass. 1986) (citing the

---

[2] The Highmark Defendants cite Schafer v. Bd. of Educ. of the Sch. Dist. of Pittsburgh, 903 F.2d 245 (3d Cir. 1990), in their Motion to Dismiss. See Highmark Defs.' Br., ECF No. 27, p. 12. However, as Owens-Presley suggests, the Schafer decision actually tends to support the Plaintiff's position in this matter.

Third Circuit's decision in <u>Glus</u> and finding "judicially created exceptions to the strict application of this general rule"); <u>Brewster v. Shockley</u>, 554 F. Supp. 365, 368 (W.D. Va. 1983) (exception recognized where the named defendant and unnamed defendant are substantially identical or are in an agency relationship, and another exception is recognized where the named and unnamed defendants are engaged in a common discriminatory scheme).

Of note, the Highmark Defendants do not appear to deny they were on notice of the EEOC Charge, in either their first Motion to Dismiss, or in their second Motion to Dismiss.  The Highmark Defendants do not appear to deny that they actually received the EEOC Charge.  The Highmark Defendants still did not deny they received adequate notice even when Plaintiff specifically included such an allegation in his First Amended Complaint, filed as of right in response to the Highmark Defendants' first Motion to Dismiss.  The Highmark Defendants allege that they were not named in the caption.  If Highmark received notice of Plaintiff's Charge of Discrimination, and knew that there was such an administrative charge filed against it, Plaintiff is permitted to bring his Title VII, PHRA, and ADA claims against Highmark.

<u>Owens</u> also suggests discovery is needed on this issue where there is notice and a commonality of interest.  As above, in this case there is alleged to be notice, and also a commonality of interest between the Commonwealth Defendants, and

the Highmark Defendants, as third-party administrator of the employer-sponsored health plan at issue.

Relatedly, it should be pointed out that Plaintiff filed a timely complaint with the Department of Health and Human Services ("HHS"), alleging benefits discrimination against Highmark.  This fact is relevant to the inquiry here on the question of notice.  Plaintiff contends that the Highmark Defendants received the HHS complaint.  The EEOC Charge contains the same allegations – denial of gender confirmation surgery categorically constituting discrimination over many years – as similarly contained in the HHS Complaint.  Plaintiff further suggests that the Highmark Defendants would therefore at some point have received notice of the same allegations being made at the EEOC level.  It is believed the HHS Complaint was filed during the pendency of the Plaintiff's EEOC Charge around the same timeframe.  In light of the above arguments and authorities, it is not clear that Plaintiff failed to exhaust administrative remedies.  Defendants' Motion to Dismiss on this basis should be denied.

### 3. In the alternative, a court can permit equitable tolling where a discrimination plaintiff timely asserted his rights <u>mistakenly in the wrong forum.</u>

Third, and in the alternative, if necessary, it is recognized, including in the Third Circuit, that a court can permit equitable tolling for purposes of exhaustion where a discrimination plaintiff has "timely asserted his rights mistakenly in the

wrong forum." Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999); see also

Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 240 (3d Cir. 1999); Carter

v. Keystone, 360 Fed. Appx. 271, 272-73 (3d Cir. 2010); Jurbala v. United States,

No. 14-1238, 2015 U.S. Dist. LEXIS 33878, *21 (M.D. Pa. 2015); Etienne v.

Sobina, No. 10-5522, 2011 U.S. Dist. LEXIS 88786, *10 (E.D. Pa. Aug. 10, 2011);

Walck v. Discavage, 741 F. Supp. 88, 91 (E.D. Pa. 1990); Flores v. Predco Servs.

Corp., No. 10-1320, 2011 U.S. Dist. LEXIS 83443, *22-26 (D.N.J. 2011).

The case of Doe v. WM Operating, LLC, out of the Eastern District of

Pennsylvania, addressed similar circumstances, in a sexual-orientation

discrimination case.  See Doe v. WM Operating, LLC, No. 17-2204, 2017 WL

3390195 (E.D. Pa. Aug. 7, 2017).  In Doe v. WM Operating, the plaintiff alleged

employment discrimination on account of sexual orientation.  However, at the time

Doe v. WM Operating, LLC, was filed, the Supreme Court's decision in Bostock

v. Clayton County, Georgia, had not been decided.  This is similar to the timeframe

in the instant case.  More specifically, in Doe v. WM Operating, the plaintiff

attempted to exhaust administrative remedies with various local commissions that

did extend explicit protection to "sexual orientation," "gender identity," and

"gender expression."  WM Operating, 2017 WL 3390195, *4.  However, it was

unclear which municipality specifically applied, as it appeared the plaintiff was

employed along the township line, either in Philadelphia, Springfield, or

Whitemarsh Township.  Id.  The plaintiff filed a timely complaint in several

forums, but not in a timely fashion with the correct human relations commission.

Id.  The court in Doe v. WM Operating specifically relied on some of the case law

above, primarily Jones v. Morton, 195 F.3d 153 (3d Cir. 1999), and found that the

plaintiff had not failed to exhaust.  Id.  Specifically, the court in WM Operating

reasoned that "Plaintiff's complaint shows that he exercised reasonable diligence

in investigating and bringing his claims and that he mistakenly brought them in the

wrong forum due to the difficulty of ascertaining the appropriate jurisdiction."  Id.

at *5.  For this reason, the court in Doe v. WM Operating denied the Defendants'

motion to dismiss the local LGBT claims.  The court specifically stated that it

intended to permit discovery into those claims as well.  Id.

The HHS Complaint is relevant not only to the question of notice, but also

on the issue of filing timely in the wrong jurisdiction.  Plaintiff alleges in the

Complaint, "Alternatively, Plaintiff also filed a complaint with the federal

Department of Health and Human Services' Office of Civil Rights.  In the

alternative, if necessary, Plaintiff contends equitable tolling is therefore appropriate

as against Highmark, from the time of Plaintiff's filing with this entity, on or about

October 17, 2016."  See Pltf.'s Am. Compl., ECF No. 25, para. 43.  Plaintiff was

not represented by undersigned counsel at the time of the EEOC Charge or the

HHS Complaint.  Plaintiff was being assisted by the Mazzoni Center.  Bostock had

not been decided at the time.  Plaintiff asserted his claims against Highmark before

HHS which should be considered here for purposes of exhaustion in the wrong

forum.

### C.     Defendants' Statute-of-Limitations Argument Regarding Plaintiff's Section 1557 Claim Under the ACA Should Be Rejected.

Section 1557 of the Affordable Care Act does not require exhaustion, and

clearly permits third-party administrator liability for discrimination.  Defendants

make the additional argument that the statute-of-limitations allegedly bars

Plaintiff's Section 1557 claim under the ACA.  Defendants are incorrect.

Once again, it should be noted that the statute of limitations is an affirmative

defense which should be rejected at this stage of the case.  See Hanna, 514 F.2d at

1094; see also Bethel, 570 F.2d at 1174.  In Bethel, the Third Circuit concluded

that "the district court could not properly dismiss . . . claims on a Rule 12(b)(6)

motion," based on the statute of limitations, "for if [the plaintiff's] assertions are

true, as we are obliged to presume they are at this stage, each of the discriminatory

acts, by having been continued to the date of the filing of the complaint, would

necessarily escape the bar of any statute of limitations."  Id.  In short, Bethel held

that, "[i]f the bar is not apparent on the face of the complaint, then it may not

afford the basis for a dismissal of the complaint under Rule 12(b)(6)."  Id. See also

Gomez, 446 U.S. at 640.

First, Plaintiff contends he has filed his Complaint, in point of fact, within the appropriate two-year statute of limitations.  Plaintiff disagrees with Defendants' characterization of this suit as alleging conduct which *only* occurred in February 2017.  This is incorrect.  The discriminatory conduct continued for years until the exclusion for gender-confirmation surgery was lifted effective January 1, 2018.  The exclusion was lifted on January 1, 2018, Plaintiff contends, because it constituted an overt form of discrimination, and was rescinded.  Plaintiff clearly alleges in the First Amended Complaint, "It should be noted that there is no statute-of-limitations bar to any allegations from December 23, 2019 through January 1, 2020, under any law for which there is a two-year statute of limitations, as such time period is within the two year time period."  See Pltf.'s Am. Compl., ECF No. 25, para. 45.  Plaintiff contends the time period should at minimum be measured from the "last discriminatory act" or last time period of the denial, from December 23, 2019 through January 1, 2020, rather than the first discriminatory denial in or around February 2017.

Second, Plaintiff clearly alleges that the continuing violation doctrine or theory applies to his claims.  See id. at para. 45.  There was a continuous denial over time which Plaintiff contends constituted discrimination.  Plaintiff may recover for the continuous discriminatory denials beginning in February 2017, and lasting until December 23, 2017 through December 31, 2017.  Bethel also supports

Plaintiff's allegations of continuous discrimination in this regard.  The fact that the discrimination was continuous, and that Plaintiff had to wait so long for gender-affirming surgery, is the gravamen of the Plaintiff's case as to how the Highmark Defendants harmed him.  The continuing violation doctrine or theory would therefore apply.  It is *not* clear that such doctrine would *not* apply at this stage of the case.  Therefore, Defendants' statute-of-limitations defense, which is an affirmative defense, should be denied at this time.

## IV.   CONCLUSION

For all of the foregoing reasons, Plaintiff, John Doe, respectfully requests that this Court deny the Highmark Defendants' Motion to Dismiss.

Respectfully submitted,

**THE LAW OFFICES OF ERIC A. SHORE, P.C.**

DATED:  08/10/2020       */s/ Justin F. Robinette, Esquire*
JUSTIN F. ROBINETTE, ESQUIRE
Attorney I.D. No. 319829
THE LAW OFFICES OF ERIC A. SHORE, P.C.
Two Penn Center
1500 JFK Boulevard, Suite 1240
Philadelphia, PA 19102
Phone: (215) 944-6121
Fax: (215) 944-6124
JustinR@EricShore.com

*Attorney for Plaintiff, John Doe*

## <u>CERTIFICATE OF SERVICE</u>

I, JUSTIN F. ROBINETTE, ESQUIRE, hereby certify that on this <u>10th</u> day of <u>AUGUST, 2020</u>, I caused the foregoing document entitled Plaintiff's Brief in Opposition to the Highmark Defendants' Motion to Dismiss Plaintiff's First Amended Complaint to be electronically filed causing service to be effected on all counsel of record via the Court's electronic filing system.

Respectfully submitted,

**THE LAW OFFICES OF ERIC A. SHORE, P.C.**

DATED:  08/10/2020          */s/ Justin F. Robinette, Esquire*
JUSTIN F. ROBINETTE, ESQUIRE
Attorney I.D. No. 319829
THE LAW OFFICES OF ERIC A. SHORE, P.C.
Two Penn Center
1500 JFK Boulevard, Suite 1240
Philadelphia, PA 19102
Phone: (215) 944-6121
Fax: (215) 944-6124
JustinR@EricShore.com

*Attorney for Plaintiff, John Doe*