IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE,<br><br>                Plaintiff,<br><br>     v.<br><br>COMMONWEALTH OF PENNSYLVANIA, *et al.*,<br><br>                Defendants. | No. <u>19-2193</u> |

**BRIEF OF PLAINTIFF IN OPPOSITION TO DEFENDANT, COMMONWEALTH OF PENNSYLVANIA'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

    Plaintiff, John Doe, by undersigned counsel, hereby submits and files the following Brief in Opposition to the Defendant, Commonwealth of Pennsylvania's Motion to Dismiss Plaintiff's First Amended Complaint, and states as follows:

**I.    COUNTER-STATEMENT OF THE QUESTIONS INVOLVED**

    1.    Has Plaintiff sufficiently set forth allegations that the Commonwealth of Pennsylvania is liable under Title VII, the Pennsylvania Human Relations Act, and the Americans with Disabilities Act?

           Suggested Answer:  **YES.**

    2.    Is Defendant, Commonwealth of Pennsylvania entitled to sovereign immunity?

Suggested Answer:  <u>**YES.  However, the Plaintiff reserves the right to bring those state law claims as against the Commonwealth of Pennsylvania in state court.**</u>

## II.     BRIEF FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a current employee of the Commonwealth of Pennsylvania. Plaintiff is a transgender male who brings this action for damages, declaratory relief, and equitable/injunctive relief, on account of the Commonwealth of Pennsylvania's previous exclusions of gender confirmation surgery ("GCS"), and other gender-affirming care, from its employer-sponsored health plan.  Plaintiff contends that such exclusions constitute sex and disability discrimination *per se*.

Plaintiff filed the instant action on December 23, 2019, out of an abundance of caution, to meet any applicable statutes of limitations.  The exclusion of GCS, and other gender-affirming care, was lifted on January 1, 2018.  Plaintiff contends the exclusion was ultimately lifted because it was an overt form of discrimination. Plaintiff filed the present action against two (2) sets of Defendants who Plaintiff believes are responsible for the discriminatory decisions at issue which caused him harm – (1) his employer, which consist of the Commonwealth of Pennsylvania and the Department of Human Services, and relatedly, the Pennsylvania Employees' Benefit Trust Fund ("PEBFT"); as well as (2) Highmark, the insurance company or

carrier with respect to the employer-sponsored health plan. Plaintiff seeks to recover damages for the entire time period he was denied necessary medical care.

The Highmark Defendants filed a Motion to Dismiss to which Plaintiff filed a Response in Opposition. Defendant, Commonwealth of Pennsylvania has filed its own Motion to Dismiss arguing that it is not responsible for the discriminatory acts alleged by Plaintiff under TITLE VII, the ADA, the REHAB Act and the ACA. Defendant, Commonwealth also alleges it is entitled to sovereign immunity on Plaintiff's PHRA claims and claims under the Pennsylvania Constitution.

Defendant's arguments fail at the Motion to Dismiss stage as the allegations set forth by Plaintiff sufficiently allege that the Commonwealth of Pennsylvania is responsible for the discriminatory acts given rise to his claims. Further, the Commonwealth is not entitled to sovereign immunity.

## III. ARGUMENT

### A. Motion to Dismiss Standard.

1. Motion to Dismiss: Fowler re. Twombly and Iqbal.

The Third Circuit has held that the United States Supreme Court in Twombly and Iqbal merely requires that the Complaint "set out 'sufficient factual matter' to show that the claim is sufficiently plausible…[allowing] the reasonable inference that the defendant is liable for the misconduct alleged." Fowler v.

UPML Shadyside, 578 F. 3d 203 (3rd. Cir. 2009); quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Phillips v. County of Allegheny, 515 F.3d 224, 230 (3rd. Cir. 2008). "Courts must accept all factual allegations as true, construe the Complaint in the light most favorable to the Plaintiff and determine whether, under any reasonable reading of the Complaint, the plaintiff may be entitled to relief." Fowler, supra, quoting Phillips, at 223. A Complaint need only set forth facts sufficient to support a plausible claim. Twombly, at 564.

Further, "[e]ven post-Twombly, it has been noted that a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of a necessary element." Fowler, supra; quoting Graff v. Subbiah Cardiology Associates, Ltd., 2008 WL 2312671 (W.D.Pa. 2008). Thus, courts should not dismiss a complaint for failure to state a claim if it contains either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Montville Twp. V. Woodmont Builders, LLC, No. 05-4888, 2007 WL 2261567 at *2 (3d. Cir. 2007).

"Under the Federal Rules of Civil Procedure, an evidentiary standard is not a proper measure of whether a complaint fails to state a claim." Fowler, supra "…[S]tandards of pleadings are not the same as standards of proof." Id. "[A] well-

4

pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely." Id. (quoting Twombly, at 556).

    2.    Amended Pleading

A Plaintiff should be provided an opportunity to file an Amended Complaint if it appears that the deficiencies can be corrected. Twombly, supra.; See, 2A J. Moore, Moore's Federal Practice ¶12.07 [2.-5], P.12-99 (2d ed. 1994); accord, In re Spree.com Corp., 2001 WL 1518242 (Bankr. E.D. Pa. 2001). Under this liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

The Court should freely give leave to amend a Complaint "when justice so requires." F.R.C.P. 15(a)(2); Fowler, supra. ("we note that the District Court inexplicably foreclosed Fowler from an opportunity to amend her Complaint so as to provide further specifics…" Though the deadline for amended pleadings had not yet expired, the District Court dismissed Fowler's Complaint with prejudice **in error**) (emphasis added). The Court should grant Plaintiffs leave to amend their Complaint unless futile or prejudicial, even if not requested. Adams v Gould, Inc., 739 F.2d 858, 868-870 (C.A.3 1984) (reversing district court denial of motion to

amend a complaint to assert a new legal theory); Arthur V. Maersk, Inc., 434 F.3d 196, 204-2017 (C.A.3 2006) (reversing district court denial of motion to amend to add a new party approximately one year after initiation); Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (C.A.3 1993) (finding no prejudice three years after action and two years after complaint was amended for second time). "Prejudice" is often used as a misnomer – prejudice is not defined by the requirement of ongoing litigation or defense but instead results from an inability to defend. Id. Here, Plaintiff has clearly set forth the legal liability as against the Defendant, Commonwealth of Pennsylvania. Critically, the Defendant, Commonwealth of Pennsylvania discriminated against the Plaintiff by willfully and purposefully refusing to provide health insurance to meet Plaintiff's substantial medical need for gender confirmation surgery. The arguments advanced by Defendant, specifically, that it was "not responsible" for the exclusions of gender confirmation surgery from its health insurance plan it bargained for, purchased and provided to Plaintiff. The allegations of Plaintiff's Amended Complaint clearly set forth the Commonwealth's liability and responsibility not to discriminate in the health benefits it provides to the Plaintiff as the Plaintiff's employer. In the event, the Court is inclined to grant Defendant's motion, Plaintiff seeks leave to amend to potentially plead additional facts to remedy any deficiency in the Plaintiff's Amended Complaint.

Notwithstanding the foregoing request for leave to amend, when applying the correct standard, Plaintiff's Amended Complaint is sufficiently specific in that it clearly articulates facts giving rise to the claims set forth therein.

> A. **Plaintiff Has Pled Viable Claims Against The Commonwealth of Pennsylvania Under Title VII, the Pennsylvania Human Relations Act, and the Americans with Disabilities Act.**

Title VII uses broad language to prohibit discrimination and also broadly defines an "employer" for purposes of the Act as explained above. This is consistent with the statutory intent or purpose of Title VII which is to bring equality of employment opportunity to all aspects of the employment relationship and to eradicate discrimination in all its forms.

The congressional objective of Title VII is to afford equality of employment opportunity to all. The text of Title VII extends by its plain terms to all "terms, conditions, benefit, and privileges" of employment, which includes insurance benefits, as explained above. The case law cited above by Plaintiff also speaks broadly of Title VII's application to all "employment opportunities," which is sufficiently broad to include the allegations in the instant case. It has been recognized that "exempting plans not actually administered by an employer would seriously impair the effectiveness of Title VII" in this regard. See, e.g., Spirt, 691 F.2d at 1063. Moreover, "the definition of 'employer,' like the rest of Title VII, is given a liberal construction in order to effectuate the statute's remedial purpose."

7

Vegh v. Gen. Elec. Co., Civ. Action No. 83-744, 1983 U.S. Dist. LEXIS 16885, *3 (E.D. Pa. May 18, 1983); see also Baker v. Stuart Broad Co., 560 F.2d 389, 391 (8th Cir. 1977).

As to the Commonwealth of Pennsylvania, Plaintiff alleged Doe has worked for the Commonwealth of Pennsylvania from May 2008 through the present. Doe is a current employee of the Commonwealth's Office of Mental Health and Substance Abuse Services. [See Plaintiff's First Amended Complaint, attached hereto as Exhibit A at ⁋9.] Plaintiff also alleges that Upon information and belief, at all relevant times, the PEBTF Board of Trustees determines the employer-sponsored health plan, medical, and related benefits of employees of the Commonwealth, and is, either solely, or jointly with the Commonwealth, the "employer," and Highmark, with respect to the benefits, terms, conditions, and privileges of employment, specifically employer-sponsored health insurance, medical, and related benefits provided to and for Commonwealth employees and their covered beneficiaries through the PEBTF Medical Plan. [See Exh, A at ⁋ 4.] Doe was subjected to irrational and invidious state-sanctioned discrimination by the Commonwealth based on gender identity and/or expression, gender stereotyping, sex, and disability in the benefits, terms, conditions, and privileges of his employment with the Commonwealth by PEBTF and the Commonwealth. Defendants' conduct singled out transgender employees, and then expressly and

categorically deprived them of coverage under the PEBTF Medical Plan for medically necessary surgery, and related treatment and care, for gender dysphoria ("GD"). [See Exh. A at ¶ 10.] The Commonwealth of Pennsylvania provides health insurance coverage to employees, including Doe, through the Plan. PEBTF and its Board of Trustees have the authority to determine the availability, nature, and extent of benefits under the Plan, including exclusions from coverage. [See Exh. A at ¶ 53.] Exclusions of insurance coverage for gender (or sex) affirming surgery (also known as sex or gender reassignment surgery) and related care and treatments based on a belief that such treatments are cosmetic or experimental is both prejudiced and widely recognized as having no basis in medical science. They are purely the result of discriminatory bias and invidious stereotypes about people who are transgender. [See Exh. A at ¶ 54.] Indeed, all leading medical and mental health professional associations recognize that such treatments, including surgery, are medically necessary for many individuals with gender dysphoria, and have specifically recommended that insurance should cover such treatments. [See Exh. A at ¶ 55.] Defendants' conduct in depriving transgender individuals of such medically necessary treatment caused Doe intense physical pain, body dysmorphia, suicide ideation, psychological trauma, humiliation, mental anguish, and severe emotional distress. [See Exh. A at ¶ 56.]

9

Defendant, Commonwealth of Pennsylvania is incorrect that it cannot be held liable here for its own involvement or responsibility for the exclusion of gender confirmation surgery from its health insurance plan.  These are very particular arguments for exclusion which are not consistent with (1) the broad language of Title VII; (2) the Supreme Court's pronouncement on the issue, for example, in Los Angeles Water & Power v. Manhart, 435 U.S. 702 (1978); (3) several district and Circuit court decisions, including reported and precedential cases within this jurisdiction, on the issue; (4) including Tovar v. Essentia Health, 857 F.3d 771 (8th Cir. 2017), which is a recent reported Circuit court decision which is persuasive regarding the question at hand.

Plaintiff has implicated the conduct of Defendant, Commonwealth of Pennsylvania itself in the discriminatory act of failing to provide health coverage for gender-confirmation surgery, on a categorical basis, for years.  Defendant can be held liable for its own involvement and its own discriminatory acts under Title VII, the PHRA, and the ADA, in addition to Section 1557 of the ACA.[1]

The Eighth Circuit decision in Tovar v. Essentia Health, 857 F.3d 771 (8th Cir. 2017), is persuasive on the question at hand, raised in Plaintiff's Amended Complaint specifically.  In Tovar, the plaintiff brought a discrimination lawsuit

---

[1] The arguments as to Title VII contained in Section A are incorporated by reference, and should apply with equal force, to this Court's analysis of the Plaintiff's PHRA and ADA claims.

10

against two (2) sets of defendants – her employer, and the third-party administrator that administered the plaintiff-employee's employer-sponsored health plan. Tovar v. Essentia Health, 857 F.3d 771, 773. (8th Cir. 2017). Specifically, the plaintiff was "a nurse practitioner who was employed by Essentia from 2010 to 2016," "Tovar's benefits as an employee of Essentia included health insurance provided through the Essentia Health Employee Medical Plan (the plan)," and "[t]he plan corresponded to an insurance policy offered to employers by HealthPartners, Inc. and was administered either by HealthPartners, Inc. or by its subsidiary HealthPartners Administrators, Inc. (HPAI)." Id.  The plaintiff-employee alleged that coverage for her transgender son's gender-affirming care was excluded by the plan in violation of Title VII, the state human rights act, and Section 1557 of the Affordable Care Act. Id.  The health insurer defendants moved to dismiss the complaint, and the district court agreed with the defendant, on the basis that the plaintiff had "sued the wrong defendant" under the ACA. Id. at 777. More specifically, "[t]he district court reasoned that because the plan was self-funded by Essentia (meaning that Essentia rather than the plan's administrator was responsible for the payment of claims) and the plan document reserved to Essentia 'all powers and discretion necessary to administer the Plan,' including the power to change its terms, Tovar's alleged injuries were not fairly traceable to or redressable by HealthPartners, Inc. or HPAI. We disagree . . . ." Id. at 778. The Eighth

11

Circuit, on appeal, rejected the district court's argument, and ruled for the plaintiff on the ACA claim.  Id.

The Eighth Circuit held that,  "[a]lthough the plan document listed HPAI as the plan administrator, it did not provide that HealthPartners, Inc. 'has no relation to this case,' as the district court concluded."  Id.  Rather, the court found that "the plan document stated that HPAI was 'a related organization of HealthPartners, Inc.,' but it did not define the exact nature of the relationship between the two companies."  Id.  And, according to Tovar, "[p]erhaps more importantly, the plan document directed beneficiaries to send claims, complaints, and appeals of claim denials to HealthPartners, Inc. [who actually administered the plan], not to HPAI. The plan document therefore does not definitively establish that HealthPartners, Inc. was wholly uninvolved in the administration of the plan. It thus appears that, at this stage in the litigation, both HealthPartners, Inc. and HPAI are properly named as defendants."  Id.  In summary, the Tovar court held that, "[i]f HealthPartners, Inc. or HPAI provided Essentia with a discriminatory plan document, Tovar's alleged injuries could well be traceable to and redressable through damages by those defendants notwithstanding the fact that Essentia subsequently adopted the plan and maintained control over its terms."  Id.

In the Supreme Court of the United States case, Los Angeles Water & Power v. Manhart, 435 U.S. 702 (1978), referenced above, the defendant discriminated

against women as opposed to men in its actuarial tables, for insurance purposes, and was found to have violated Title VII on this basis. The Supreme Court of the United States ruled that sex discrimination is not permitted in such plans, and specifically pointed to the statutory text of Title VII, at 42 U.S.C. § 2000e(b), to support its holding. Los Angeles Water & Power v. Manhart, 435 U.S. 702, 717 n.33 (1978) (citing 42 U.S.C. § 2000e(b)).

Specifically, the Supreme Court in Manhart held that, while "Title VII and the Equal Pay Act primarily govern relations between employees and their employer, not between employees and third parties," "We do not suggest, of course, that an employer can avoid his responsibilities by delegating discriminatory programs to corporate shells." Manhart, 435 U.S. at 717 n.33. The Supreme Court held in Manhart that "Title VII applies to 'any agent' of a covered employer," and specifically cited to the text of Title VII at 42 U.S.C. § 2000e(b) (1970 ed., Supp. V), for this proposition. Manhart, 435 U.S. at 717 n.33 (citing 42 U.S.C. § 2000e(b) (1970 ed., Supp. V)).

The Manhart case was also recently cited as instructive by the Supreme Court in Bostock v. Clayton County, Georgia, No. 17-1618, --- S. Ct. ---, 2020 WL 3146686 (U.S. June 15, 2020). See Bostock v. Clayton County, Georgia, No. 17-1618, --- S. Ct. ---, 2020 WL 3146686, at *2 (U.S. June 15, 2020). In Bostock, the Supreme Court held that all LGBT discrimination is a form of sex discrimination

as a matter of law, and that the text of Title VII should primarily control the analysis when arguments regarding exclusion from coverage are raised. Id. The plain text of Title VII extends liability for health benefits discrimination to Defendant, Commonwealth.

Also as set forth in the Plaintiff's Opposition to the Highmark Defendants' Motion to Dismiss, Plaintiff refers the Court to Myers v. Garfield and Johnson Enterprises, Inc., 679 F. Supp. 2d 598 (E.D. Pa. 2010), out of the Eastern District of Pennsylvania.

Specifically, Myers stands for the proposition that there are several viable theories of liability against a nominal employer, including (1) single employer, (2) joint or co-employer, (3) ostensible or apparent employer, and (4) an agency theory of liability. Myers acknowledges that the question of control by an entity alleged to be an employer is a fact-intensive inquiry which must take account of the totality of the circumstances, in the form of several factors, rather than just one factor. Id. at 608. "No single factor is dispositive," "a weak showing on one factor may be offset by a strong showing on" another factor, and also "the parties' beliefs and expectations regarding the relationship between the plaintiff and defendant are also relevant." Id. at 608 (citation omitted).

Although it is a part of the inquiry, the "day-to-day supervision of employees" is only one part of the inquiry. Myers, 679 F. Supp. 2d at 609. Myers acknowledges, for example, that there is actually U.S. Supreme Court precedent for the proposition that "the provision of employee benefits" is also specifically relevant to the analysis as well. Myers, 679 F. Supp. 2d at 606 n.8 (citing Nationwide Mut. Ins. Co. v. Darden, 503 U.S. at 318, 323 (1992), and Cmty. for Creative Non–Violence v. Reid, 490 U.S. 730, 751-752 (1989)); see also Faush v. Tuesday Morning, Inc., 808 F.3d 208, 214-15 n.6 (3d Cir. 2015) (same). This should certainly be *the* relevant consideration in the instant case where the gravamen of the alleged discrimination actually involves discrimination specifically in the provision of the insurance benefits at issue. If there is a single factor which should be dispositive in the instant case, given the gravamen of the Plaintiff's case, then it should be the provision of the insurance benefits at issue.

Myers further states specifically that activities ranging from "set[ting] conditions of employment" to "control of employee records" would also be relevant to the analysis. Myers, 679 F. Supp. 2d at 609. Myers explicitly acknowledged that "set[ting] conditions of employment," for example, is itself a factor that specifically "include[s] compensation, **benefits**, and hours." Id. at 607 (emphasis added). In other words, the setting of conditions is interpreted as extending not simply to the setting of conditions of compensation or hours, but

15

also extends to the setting of conditions of benefits.  Id.  Further, Myers also explicitly acknowledged that  "control of employee records" is a factor that "include[s] payroll, **insurance**, taxes and the like."  Id. (emphasis added).  In other words, the control over employee records is interpreted as not only extending to payroll records, but also to insurance benefits and the like, specifically.  Myers supports the Plaintiff's position in this matter.

Plaintiff has sufficiently alleged control as to Defendant, Commonwealth of Pennsylvania regarding the terms and conditions of Plaintiff's employment, specifically with regards to the health insurance provided to the Plaintiff by his employer.  Defendant's Motion to Dismiss must be denied.

### B. **Defendant's sovereign immunity argument is well founded as to Plaintiff's ability to bring State Law claims against as to Plaintiff's PHRA Claims.**

Plaintiff agrees that his Pennsylvania state law claims are subject to sovereign immunity in federal court.  Plaintiff agrees to dismissal of those state law claims as against the Commonwealth of Pennsylvania only, without prejudice to filing those claims in Pennsylvania state court, with equitable tolling of the filing date of those claims in the instant matter lawsuit.

## IV. <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff, John Doe, respectfully requests that this Court deny Defendant, Commonwealth of Pennsylvania's Motion to Dismiss.

                                              **LAW OFFICES OF ERIC A. SHORE, P.C.**

                                              BY:<u>  /s/Graham F. Baird           </u>
                                              **GRAHAM F. BAIRD, ESQUIRE**
                                              **JUSTIN F. ROBINETTE, ESQUIRE**
                                              Two Penn Center
                                              1500 JFK Boulevard, Suite 1240
                                              Philadelphia, PA 19110

                                              Attorney for Plaintiff, John Doe

Date: <u>September 16, 2020</u>