## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN DOE,** | : | **CIVIL ACTION NO. 1:19-CV-2193** |
| | : | |
| **PLAINTIFF** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff John Doe alleges 14 claims against several defendants, all arising out of denial of insurance coverage for his gender confirmation surgery. Doe alleges claims against his employer, the Commonwealth of Pennsylvania and its Department of Human Services; the Pennsylvania Employees Benefit Trust Fund and its board and trustees; and several defendants representing his insurance company, Highmark Health Insurance.[1] Doe asserts employment discrimination claims under various federal and state statutes, healthcare discrimination under federal law, and claims for violation of both the United States Constitution and the Pennsylvania Constitution. Commonwealth defendants and Highmark move to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[1] Named insurance defendants include Highmark Health Insurance Company; HM Health Insurance Company; Highmark Health; Highmark, Inc.; Highmark Blue Cross Blue Shield; and/or Highmark (collectively, "Highmark"). (See Doc. 25 ¶ 14).

## I.    Factual Background & Procedural History

Plaintiff John Doe is a transgender employee of the Commonwealth of Pennsylvania's Department of Human Services in its Office of Mental Health and Substance Abuse Services.  (See Doc. 25 ¶¶ 2, 9).  Doe has worked for the Commonwealth since 2008.  (See id. ¶ 9).  Doe carries a diagnosis of gender dysphoria, a medical condition that may require treatments including gender confirmation surgery ("GCS").  (See id. ¶¶ 11, 49-51, 72).  Doe began receiving gender-affirming health treatment in May 2014.  (See id. ¶ 71).  His treatment included behavioral health counseling and hormone therapy, and his treatment provider determined that a bilateral mastectomy was clinically appropriate and medically necessary.  (See id. ¶¶ 71-72).

The Commonwealth created the Pennsylvania Employees Benefit Trust Fund ("PEBTF") in 1988 to provide "employer-sponsored health plan, medical, and related benefits" to Commonwealth employees.  (See id. ¶¶ 3, 53).  Highmark is a "third-party administrator" of the health plan Doe is enrolled in through his Commonwealth employment.  (See id. ¶ 14).  In 2016 and years prior, PEBTF "excluded coverage under all options available under the PEBTF Medical Plan" for GCS.  (See id. ¶¶ 57, 64).  GCS coverage was expressly excluded from the 2016 plan, as were "charges for any treatment relating to or in connection with" GCS.  (See id. ¶¶ 58-59).  The 2017 plan retained this exclusion, but also carved out an exception: the exclusion would not apply if excluding coverage would violate the Patient Protection and Affordable Care Act.  (See id. ¶ 60).

In July 2016, Doe sought authorization for coverage for a mastectomy and related procedures, but "a representative of Highmark" told Doe by phone that the procedure was excluded. (See id. ¶ 80). Doe's doctor provided Highmark a letter explaining the medical necessity of these procedures, but nothing changed. (See id. ¶ 81). In November 2016, a Highmark representative from the "dedicated PEBTF unit" told Doe that Doe's request was never reviewed "because the Commonwealth and/or PEBTF [did] not offer these benefits." (See id. ¶¶ 83-84). However, PEBTF stated in a November 2016 letter that 2017 plans would cover GCS. (See id. ¶ 86).

On January 3, 2017, another Highmark representative told Doe GCS would be covered in his 2017 PEBTF plan. (See id. ¶ 88). Doe again communicated with Highmark and his provider's office to secure necessary documentation for GCS coverage. (See id. ¶ 90). But a few weeks later, on February 8, 2017, a Highmark representative communicated to Doe that "PEBTF sent coding to reinstate the exclusion" for GCS due to litigation in Texas. (See id. ¶¶ 91-93). Doe received a letter dated February 22, 2017, from PEBTF's executive director confirming that "PEBTF postponed any changes to its plan benefits pending the outcome of [the Texas] litigation." (See id. ¶ 94).

After the denial, Doe experienced "severe emotional distress in the form of body dysmorphia and immense psychological trauma." (See id. ¶ 95). Doe felt compelled to take sick leave, his social life suffered, and he avoided otherwise-pleasurable activities such as visiting the beach and going to the gym. (See id. ¶¶ 95-107). Doe alleges that the "unequal terms and conditions" of his employment continued until January 1, 2018, when the GCS coverage exclusion was removed.

(See id. ¶¶ 100, 108).  Doe received GCS in March 2018 with costs (less the deductible) covered by his PEBTF plan.  (See id. ¶ 100).

Doe filed the instant lawsuit in December 2019 and filed an amended complaint in July 2020, asserting various statutory and constitutional claims.  He seeks compensatory and punitive damages, fees, costs, and interest, as well as equitable and injunctive relief.  Commonwealth defendants and Highmark filed Rule 12(b)(6) motions to dismiss.  These motions are fully briefed and ripe for disposition.  The remaining defendants (PEBTF and its board as well as individual trustees) have yet to be served.

## II.  Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted.  FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31

(3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

Federal Rule of Civil Procedure 8(c) classifies a statute of limitations claim as an affirmative defense that must be pled in an answer to the complaint.  FED. R. CIV. P. 8(c).  Nevertheless, the court may dismiss a complaint as time-barred under Rule 12(b)(6) if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002); see Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994).  This deficiency must be apparent on the face of the pleading.  Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (citation omitted).  The Third Circuit Court of Appeals has indicated that the meaning of "the face of the complaint," as it relates to asserting affirmative defenses in a motion to dismiss, is coextensive with the general Rule 12(b)(6) limitations.  Id.; see also Hoffman v. Nordic Nats., Inc., 837 F.3d 272, 280 & n.52 (3d Cir. 2016)

(citations omitted) (discussing raising affirmative defense of preclusion in Rule 12(b)(6) motion). Thus, the materials properly considered include not only the complaint but also matters of public record, exhibits attached to the complaint, and undisputed materials embraced by the complaint but provided by the defendant. Schmidt, 770 F.3d at 249; Hoffman, 837 F.3d at 280 & n.52.

### III.  Discussion

Doe asserts federal statutory claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.; Title I the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116; and 42 U.S.C. § 1983. He also alleges state statutory claims under the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. AND CONS. STAT. ANN. § 951, *et seq*., and state constitutional claims under Pennsylvania's Equal Rights Amendment, PA. CONST. art. I, § 28, and Equal Protection Clause, PA. CONST. art. I, § 26. The moving defendants seek to dismiss most of these claims.

#### A.  Uncontested Claims

At the outset, we dispose of Doe's PHRA claims and Pennsylvania constitutional claims against Commonwealth defendants. Commonwealth defendants move to dismiss these claims based on sovereign immunity, (see Doc. 43 at 5-7), and Doe concedes sovereign immunity applies to bar his state-law claims in this court, (see Doc. 46-3 at 16). We will therefore grant Commonwealth defendant's motion to dismiss these counts.

**B.      Section 1557 Claims**

Doe alleges claims for sex and disability discrimination against

Commonwealth defendants as well as Highmark under Section 1557 of the ACA.

The viability of these two claims presents a threshold legal question regarding the

applicable statute of limitations, so we analyze them together.

Congress passed the ACA in 2010.  See Pub. L. No. 111-148, 124 Stat. 119

(2010).  Section 1557 of the ACA provides for nondiscrimination in healthcare,

stating:

> Except as otherwise provided for in this title (or an
> amendment by this title), an individual shall not, on the
> ground prohibited under title VI of the Civil Rights Act of
> 1964, title IX of the Education Amendments of 1972, the
> Age Discrimination Act of 1975, or section 794 of Title 29,
> be excluded from participation in, be denied the benefits
> of, or be subjected to discrimination under, any health
> program or activity, any part of which is receiving Federal
> financial assistance, including credits, subsidies, or
> contracts of insurance, or under any program or activity
> that is administered by an Executive Agency or any entity
> established under this title (or amendments).

42 U.S.C. § 18116 (internal citations omitted).  Further, Section 1557 incorporates

"[t]he enforcement mechanisms provided for and available under such title VI, title

IX, section 794, or such Age Discrimination Act" to address ACA discrimination

violations.  Id.

Relevant to our analysis, Title IX states: "No person in the United States

shall, on the basis of sex, be excluded from participation in, be denied the benefits

of, or be subjected to discrimination under any education program or activity

receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Similarly, Section 504

of the Rehabilitation Act proclaims: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Both statutes imply a private right of action. See Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005) (citing Cannon v. Univ. of Chi., 441 U.S. 677, 690–693 (1979)) (Title IX); Fowler, 578 F.3d at 207 n.2 (citing Three Rivers Ctr. for Indep. Living, Inc. v. Hous. Auth. of Pittsburgh, 382 F.3d 412, 425-26 (3d Cir. 2004)) (Rehabilitation Act). The ACA therefore implies a private right of action through its incorporation of Title IX and the Rehabilitation Act. See, e.g., SEPTA v. Gilead Scis., Inc., 102 F. Supp. 3d 688, 698 (E.D. Pa. 2015) (finding private right of action under ACA).[2]

Highmark does not dispute that the ACA contemplates a private right of action by its incorporation of certain predicate statutes. Highmark does dispute whether Doe's claims under the ACA are timely. Congress did not establish an express statute of limitations within the ACA, and because the statute is so new, few

---

[2] See also Doe v. BlueCross BlueShield of Tenn., Inc., 926 F.3d 235, 239, 241 (6th Cir. 2019) (ACA provides private right of action, but HIV-positive plaintiff failed to state claim against health plan administrator); York v. Wellmark, Inc., No. 4-16-CV-00627-RGECFB, 2017 WL 11261026, at *16 (S.D. Iowa Sept. 6, 2017) (ACA provides private right of action, but plaintiffs could not state claim for disparate impact under ACA), aff'd, 965 F.3d 633 (8th Cir. 2020); Edmo v. Idaho Dep't of Corr., No. 1:17-CV-00151-BLW, 2018 WL 2745898, at *9 (D. Idaho June 7, 2018) (ACA provides private right of action).

courts have determined what the appropriate limitations period should be.[3] After review of applicable authorities and Section 1557 claims currently percolating in federal courts across the country, we conclude that the four-year federal "catch-all" statute of limitations applies to Doe's ACA claims. See 28 U.S.C. § 1658(a).

Enacted as part of the Judicial Improvements Act of 1990, Section 1658 states: "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of enactment of this section may not be commenced later than 4 years after the cause of action accrues." Pub. L. No. 101-650, § 313, 104 Stat. 5089, 5115 (Dec. 1, 1990). Prior to Section 1658's passage, "settled practice [was] to adopt a local time limitation as federal law if it [was] not inconsistent with federal policy to do so." Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 377 (2004) (alteration in original) (quoting Wilson v. Garcia, 471 U.S. 261, 266-67 (1985)). This "borrowing" led to an array of problems, resulting in uneven application of the same federal law across different states by requiring courts to decide "which of the forum State's statutes" should apply and "whether tolling was a matter of state or federal law." See id. at 378-79.

---

[3] The parties believe a two-year statute of limitations applies. (See Doc. 27 at 14-15; Doc. 36 at 34). While Doe does not elaborate on his reasoning, Highmark simply borrows the statutes of limitations for Title IX and Rehabilitation Act suits, which in turn apply the two-year personal injury statute of limitation for Pennsylvania. (See Doc. 27 at 14-15); see also Doe v. Mercy Cath. Med. Ctr., 850 F.3d 545, 564 (3d Cir. 2017) (citing Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 78 (3d Cir. 1989)) (Title IX); Disabled in Action of Pa. v. SEPTA, 539 F.3d 199, 208 (3d Cir. 2008) (Rehabilitation Act). The parties' agreement does not absolve the court of its independent responsibility to consider whether their view is correct.

At the recommendation of a report from the Federal Courts Study Committee that detailed these problems, Congress passed Section 1658. See FED. CTS. STUDY COMM., REPORT OF THE FEDERAL COURTS STUDY COMMITTEE 93 (Apr. 2, 1990), https://www.fjc.gov/sites/default/files/2012/RepFCSC.pdf (recommending a limitations period for "federal claims that presently lack such periods" as well as "federal claims. . . not explicitly created by Congress"). The legislature, recognizing that judicial "borrowing" had developed a body of case law for a host of federal statutes, structured Section 1658 to apply only to civil actions after its enactment, to avoid "disrupt[ing] the settled expectations" of litigants. Jones, 541 U.S. at 381 (citation omitted). After several circuit courts of appeals narrowed Section 1658's scope, the Jones Court responded: "The history that led to the enactment of § 1658 strongly supports an interpretation that fills *more rather than less* of the void that has created so much unnecessary work for federal judges." Id. at 380 (emphasis added). The Court rejected overblown concerns about party expectations and concluded that Section 1658 governs "if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." Id. at 382; see also Fowler, 578 F.3d at 209 (Section 1658 applied to Rehabilitation Act claims that arose due to a 1992 amendment).

With these principles in mind, we turn to Section 1557. As noted *supra*, Section 1557 was passed in 2010 as part of the ACA and prohibits discrimination "on the ground prohibited under" several civil rights statutes in "any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116. The few courts that have opined on Section 1557's statute of

limitations have disagreed. <u>Compare</u> <u>Smith v. Highland Hosp. of Rochester</u>, No. 17-CV-6781-CJS, 2018 WL 4748187, at *3 (W.D.N.Y. Oct. 2, 2018) (applying Title IX statute of limitations), <u>and</u> <u>Solis v. Our Lady of the Lake Ascension Cmty. Hosp., Inc.</u>, No. CV 18-56-SDD-RLB, 2020 WL 2754917, at *4 (M.D. La. May 27, 2020) (citing <u>Ward v. Our Lady of the Lake Hosp., Inc.</u>, No. CV 18-00454-BAJ-RLB, 2020 WL 414457, at *2 (M.D. La. Jan. 24, 2020)) (both applying Rehabilitation Act statute of limitations), <u>with</u> <u>Vega-Ruiz v. Northwell Health</u>, No. 20-315, ___ F.3d ___, 2021 WL 1112867, at *4 (2d Cir. Mar. 24, 2021) (applying Section 1658 statute of limitations), <u>and</u> <u>Palacios v. MedStar Health, Inc.</u>, 298 F. Supp. 3d 87, 91 (D.D.C. 2018) (same).

In <u>Ward</u> and <u>Solis</u>, the courts considered "the relevant anti-discrimination statute" to be the Rehabilitation Act because each plaintiff alleged discrimination "on the basis of disability." <u>Solis</u>, 2020 WL 2754917, at *3 (quoting <u>Ward</u>, 2020 WL 414457, at *2). <u>Smith</u> applied the statute of limitations for Title IX to a transgender plaintiff's ACA claim. <u>Smith</u>, 2018 WL 4748187, at *3. None of these three cases accounted for subsection (b) of Section 1557, which notes "nothing in this title . . . shall be construed to invalidate or limit the rights, remedies, procedures, or legal standards available to individuals aggrieved under" the aforementioned civil rights statutes. 42 U.S.C. § 18116(b). An aggrieved plaintiff can therefore allege violations of each statute, as Doe has done here with his Rehabilitation Act claim. (<u>See</u> Doc. 25 ¶¶ 142-160). A plaintiff may also have a cause of action under the ACA but not the corresponding civil rights statute, as is also the case for Doe, who does not allege a Title IX violation.

The better reasoned decisions, in our view, are <u>Palacios</u> and <u>Vega-Ruiz</u>, both of which held that Section 1658 applies. <u>See</u> <u>Palacios</u>, 298 F. Supp. 3d at 89; <u>Vega-Ruiz</u>, 2021 WL 1112867, at *4. In <u>Palacios</u>, a transgender patient sued a hospital for healthcare discrimination when it informed her it would not schedule plastic surgery for "any trans patients." <u>Palacios</u>, 298 F. Supp. 3d at 89. After tracing the history of Section 1658, the district court concluded the statute applied to the plaintiff's claim as one that "arises under" the ACA, a post-1990 statute. <u>Id.</u> at 91. In a precedential decision issued just last week, the Second Circuit echoed this sentiment. <u>See</u> <u>Vega-Ruiz</u>, 2021 WL 1112867, at *4. Considering a deaf plaintiff's ACA claim, the court of appeals held that, by enacting Section 1658, "Congress . . . sought to avoid the precise situation in which we find ourselves today." <u>Id.</u> The court rejected the district court's reasoning, invoked in both <u>Ward</u> and <u>Solis</u>, that "though the complaint formally alleges a violation of the ACA, Plaintiff's claim is made possible by the Rehabilitation Act." <u>Cf.</u> <u>Vega-Ruiz v. Northwell Health</u>, No. 19-CV-0537, 2020 WL 207949, at *3 (E.D.N.Y. Jan. 14, 2020), <u>vacated and remanded</u>, 2021 WL 1112867.

We conclude, in light of its text, purpose, and judicial treatment, that Section 1658 applies to the ACA. Under Section 1658's plain meaning, the ACA qualifies as "an Act of Congress enacted after" December 1, 1990, which provides a private right

of action for healthcare discrimination.[4]  See 28 U.S.C. § 1658(a).  Furthermore,

applying the statutes of limitations associated with Title IX and the Rehabilitation

Act would only perpetuate the "borrowing" problem that Congress sought to

eliminate by passing Section 1658, as both of these laws have been interpreted by

our court of appeals to borrow state statutes of limitations.  See H.R. Rep. No. 101-

734, at 24 (1990).  And a narrow reading of Section 1658 would contravene its broad

interpretation as handed down by the Jones Court.  Jones, 541 U.S. at 380.  We

therefore agree with the Second Circuit's decision in Vega-Ruiz by concluding "that

a plaintiff bringing a claim under the ACA presents a different case than a plaintiff

alleging the same harm under" the incorporated civil rights statute.  See Vega-Ruiz,

2021 WL 1112867, at *4.  Doe's claims for healthcare discrimination are "made

possible by" the ACA, and the four-year federal statute of limitations therefore

applies.  See Jones, 541 U.S. at 382.

Accordingly, we have little difficulty concluding that Doe's claims are timely.

Doe's amended complaint focuses on acts by the defendants in February 2017.  (See

Doc. 25 ¶¶ 90-94).  Doe filed this lawsuit on December 23, 2019.  (See Doc. 1).  Doe's

ACA claims fall squarely within the four-year statute of limitations, and we will

deny Highmark's motion to dismiss Doe's ACA claims on this ground.

---

[4] We further note that Congress explicitly incorporated a statute of
limitations into another section of the ACA, to wit: its amendment of the Fair Labor
Standards Act, which provides for a complaint procedure "in accordance with the
. . . statutes of limitation set forth in section 2087(b) of title 15, United States Code."
See Pub. L. No. 111-148, § 1558, 124 Stat. 119, 261 (Mar. 3, 2010) (codified as
amended at 29 U.S.C. § 218c).

**C.    Claims Against Commonwealth Defendants**

Commonwealth defendants advance a single argument in support of their motion to dismiss Doe's federal statutory claims.  They argue that the amended complaint lacks "any allegations that the Commonwealth or [DHS] specifically, were responsible for [Doe's] inability to receive gender dysphoria treatment," and therefore they cannot be held liable under Title VII, the ADA, the Rehabilitation Act, or the ACA.  (See id. at 4).  These defendants renounce their own involvement, arguing that the complaint implicates actions only of PEBTF or Highmark.  (See id. at 5).

At this juncture, we are constrained to agree.  Doe alleges that the Commonwealth has employed him since 2008 and offers health insurance to him.  (See Doc. 25 ¶¶ 4, 9, 53).  He also alleges that certain "written proclamations" and "mandatory anti-discrimination training" from the Commonwealth contradict Doe's experience with his attempts to secure GCS in 2016 and 2017.  (See id. ¶¶ 13, 109-110).  Yet the operative complaint is devoid of any allegations regarding the Commonwealth's present connection to PEBTF.  Its lone allegation on this subject—that PEBTF was created from "Agreement and Declaration of Trust . . . pursuant to the Commonwealth's constitutional and statutory authority"— provides little insight into how Commonwealth defendants can be held responsible for actions of an ostensibly separate entity.  (See id. ¶ 3).  The lack of clarity on this point is compounded by the fact that neither PEBTF as an entity, nor its board or any of its trustees, have yet been served in this matter.  (See Doc. 49).

In sum, Doe's amended complaint is factually deficient as to Commonwealth defendants. Nonetheless, curative amendment is conceivable, and courts should generally grant leave to amend before dismissing a curable pleading in civil rights actions. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Accordingly, we will grant Doe leave to amend his complaint against Commonwealth defendants as it relates to his federal statutory claims. See Fletcher-Harlee Corp., 482 F.3d at 251.

### D. Employment Claims Against Highmark

Doe's Title VII, ADA, and PHRA claims against Highmark are based on his allegation that Highmark "exercised significant control over an important aspect of the employment relationship" because it administered Doe's health benefits. (See Doc. 25 ¶¶ 19, 20, 28). Each of these statutes requires an employment relationship, so we address them together.

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title I of the ADA makes it unlawful for a "covered entity to discriminate against a qualified individual on the basis of disability in regard to," among other things, "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A covered entity "means an employer, employment agency, labor organization, or joint labor-management committee." Id. § 12111(2). The PHRA similarly makes it unlawful for "any employer because of

15

the . . . sex . . . or disability . . . of any individual . . . to otherwise discriminate against such individual . . . with respect to compensation, hire, tenure, terms, conditions[,] or privileges of employment or contract." 43 PA. STAT. AND CONS. STAT. ANN. § 955. PHRA claims are reviewed under the same standards as Title VII and Title I ADA claims. See Connelly v. Lane Constr. Corp., 809 F.3d 780, 791 n.8 (3d Cir. 2016) (citing Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 317 n.3 (3d Cir. 2000)) (Title VII); Colwell v. Rite Aid Corp., 602 F.3d 495, 499 n.3 (3d Cir. 2010) (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir.1996)) (ADA). Title VII and the ADA both include "agents" as potential employers. See 42 U.S.C. § 2000e(b); 42 U.S.C. § 12111(5). The PHRA includes "agent" within its meaning of "person," see 43 PA. STAT. AND CONS. STAT. ANN. § 954(a), and "person" under certain conditions can mean an "employer," see id. § 954(b).

To state a Title VII claim, Doe "must allege an employment relationship with the defendants." Covington v. Int'l Ass'n of Approved Basketball Offs., 710 F.3d 114, 119 (3d Cir. 2013). Our court of appeals looks to a multifactor test from the United States Supreme Court's decision in Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318, 323-24 (1992), to determine the existence *vel non* of an employment relationship. See Covington, 710 F.3d at 119. The Darden holding enumerated 12 factors for assessing a potential employment relationship under traditional agency law, emphasizing that "all incidents of the relationship must be assessed and weighed with no one factor being decisive." Darden, 503 U.S. at 324. These 12 factors principally consider "the hiring party's right to control the manner

and means by which [work] is accomplished," including:

> . . . the skill required [for the individual's work]; the
> source of the instrumentalities and tools; the location of
> the work; the duration of the relationship between the
> parties; whether the hiring party has the right to assign
> additional projects to the hired party; the extent of the
> hired party's discretion over when and how long to work;
> the method of payment; the hired party's role in hiring
> and paying assistants; whether the work is part of the
> regular business of the hiring party; whether the hiring
> party is in business; the provision of employee benefits;
> and the tax treatment of the hired party.

Id. at 323. While all factors merit consideration, control over the plaintiff's "daily employment activities" is paramount. See Covington, 710 F.3d at 119; see also Faush v. Tuesday Morning, Inc., 808 F.3d 208, 214 (3d Cir. 2015); Plaso v. IJKG, LLC, 553 F. App'x 199, 204 (3d Cir. 2014) (nonprecedential). The existence of an employment relationship under the ADA similarly "focus[es] on the common-law touchstone of control." See Clackamas Gastroenterology Assocs., P. C. v. Wells, 538 U.S. 440, 448-49 (2003) (noting the Equal Employment Opportunity Commission's manual for ADA claims cited Darden factors).

In the case *sub judice*, Doe alleges facts relevant to a single Darden factor, averring that Highmark "was involved in" and "had control over" a benefit of his employment, *viz.*, his health insurance. (See Doc. 25 ¶¶ 17-20). None of the other Darden factors are present: Doe does not allege that Highmark hired him or pays him, allocates work assignments to him, provides tools for him to do his job, dictates the structure or length of his typical workday, requires that he work on Highmark property, or exercises any other type of control over his daily work. Cf. Darden, 503

U.S. at 323; see also Ford v. Unum Life Ins. Co. of Am., 351 F. App'x 703, 706 (3d Cir.

2009) (nonprecedential) (Title VII claim against insurer for denial of long-term

disability benefits "not cognizable" because insurer never employed plaintiff).

Doe's opposition brief does not allude to any other facts that could cure this

deficiency.  Instead, while acknowledging that "no single factor" is dispositive of

employment status, Doe doubles down on his theory that "provision of insurance

benefits," standing alone, "should be dispositive."  (See Doc. 36 at 15-16).  We

decline to contravene the express admonition of the Supreme Court and our court

of appeals on this topic.  See Darden, 503 U.S. at 324 (citation omitted); Faush, 808

F.3d at 214; Plaso, 553 F. App'x at 204.  We therefore reject this theory without leave

to amend, as we can conceive of no facts that would allow it to go forward.  Cf.

Fletcher-Harlee Corp., 482 F.3d at 251.

Doe's alternative theory—premised on Highmark's purported "agency"—is

unpersuasive.  (See Doc. 36 at 12-14).  Extrapolating from a footnote in the Supreme

Court's decision in City of Los Angeles, Department of Water & Power v. Manhart,

435 U.S. 702 (1978), Doe argues that Highmark can be liable under Title VII because

the statute applies to "any agent of a covered employer."  (See Doc. 36 at 13 (citing

Manhart, 435 U.S. at 717 n.33)).  In Manhart, the Court noted that Title VII

"primarily govern[s] relations between employees and their employer, not between

employees and third parties."  Manhart, 435 U.S. at 717 n.33.  The Court further

stated, however, that an employer cannot "avoid his responsibilities by delegating

discriminatory programs to corporate shells."  Id.  The footnote elaborated that the

defendant employer in that case "could not deny that the administrative board was its agent after it successfully argued that the two were . . . inseparable." See id. Doe does not allege that Highmark exists only as a "corporate shell" or that it is exclusively utilized by Commonwealth defendants to outsource discriminatory health insurance benefits. Cf. Manhart, 435 U.S. at 717 n.33. In other words, the essential elements of an agency relationship—where the principal controls and directs the acts of the agent—are lacking. Cf. Covington, 710 F.3d at 120.

The few courts applying Manhart's ruling to third-party entities administering retirement plans have diametrically opposed holdings. Doe relies heavily on the Second Circuit's holding that if a third party "exist[s] solely for the purpose" of allowing an employer to delegate core employment responsibilities, the third party may be "so closely intertwined with" the employer that it can be a proper defendant under Title VII. See Spirt v. Teachers Ins. Annuity Ass'n, 691 F.2d 1054, 1063 (2d Cir. 1982), judgment vacated sub nom. Long Island Univ. v. Spirt, 463 U.S. 1223 (1983). The Sixth Circuit held precisely the opposite. Peters v. Wayne State Univ., 691 F.2d 235, 238 (6th Cir. 1982), vacated, 463 U.S. 1223.

The Supreme Court granted certiorari in both cases and held that Title VII "prohibits an employer from offering its employees" a discriminatory retirement plan.[5] Ariz. Governing Comm. for Tax Deferred Annuity & Deferred Comp. Plans

---

[5] See also Douglas W. Holly, *Third Party Insurer Liability in Title VII Discrimination Actions: A Resolution Against Liability*, 18 IND. L. REV. 521, 526 (1985).

v. Norris, 463 U.S. 1073, 1074 (1983) (*per curiam*) (emphasis added); see also Erie

Cty. Retirees Ass'n v. County of Erie, 220 F.3d 193, 213 (3d Cir. 2000) (drawing on

Manhart and Norris to conclude employees stated a claim against county *employer*

under ADEA). Yet whether the benefit fund administrators were proper Title VII

defendants was not before the Court, and the Court offered no opinion on the

subject. The plurality did underscore, however, that it is the employer who is

"ultimately responsible for the 'compensation, terms, conditions, [and] privileges of

employment' provided to employees." Id. at 1089. In both Manhart and Norris, the

Court emphasized the *employer's* responsibility not to discriminate under Title VII.

We decline Doe's invitation to extend the *ratio decidendi* of Spirt to

Highmark for two reasons. First, the parties in Spirt are materially distinct from

Doe and Highmark. The defendant pension fund administrators in Spirt "exist[ed]

solely for" provision of retirement benefits to university employees. See Spirt, 691

F.2d at 1063. Doe makes no such allegations against Highmark, nor does Doe allege

facts indicating that Highmark is "so closely intertwined with" his employer that it

can be held liable under Spirt.[6] See id.

---

[6] The only allegations that come close to meeting this standard are levied against PEBTF, not Highmark. (See Doc. 25 ¶ 3). Indeed, the Manhart and Norris decisions both involved public employers that had delegated pension fund responsibilities to government-created boards or committees. See also Williams v. City of Montgomery, 742 F.2d 586, 589 (11th Cir. 1984) (both city and board with power to evaluate, transfer, promote, and demote city employees were proper Title VII defendants under agency principles); Jimenez v. Laborer's Welfare Fund of the Health & Welfare Dep't of the Constr. & Gen. Laborers' Dist. Council of Chi. & Vicinity, No. 18-CV-07886, 2020 WL 5979653, at *5 (N.D. Ill. Oct. 8, 2020) (city welfare fund was proper Title VII defendant). PEBTF has not been served, and we express no opinion as to whether PEBTF would qualify as an employer for purposes of Title VII liability.

Second, Doe's theory would have us extend Title VII liability not just to PEBTF, but to any third party that contracts with an employer or an employer's benefit trust fund to administer employee benefits. Doe therefore does not ask us to merely adopt the holding of Spirt, but by suing Highmark under Title VII, he seeks to *expand* that holding to an entity twice removed from his actual employer. We have not located a single case in which a court agreed to such an expansion of Title VII liability.[7] To the contrary, several courts have dismissed third-party administrators where agency ties are obviously lacking. For example, the District Court for the Western District of Wisconsin dismissed Title VII claims against the health insurance administrator of a transgender public employee. See Boyden v. Conlin, No. 17-CV-264-WMC, 2017 WL 5592688, at *6 (W.D. Wis. Nov. 20, 2017).[8] Similar to the facts *sub judice*, the plaintiff was employed by the state of Wisconsin, whose "Group Insurance Board" and "Department of Employee Trust Funds" controlled health plans for state employees. See id. at *1. The plaintiff asserted Title VII claims against her employer, the board, and the trust fund, and also the third-party insurance company that administered plaintiff's benefits. See id. The

---

[7] Doe erroneously relies on Tovar v. Essentia Health, 857 F.3d 771 (8th Cir. 2017), to argue that Highmark is a proper defendant under Title VII. (See Doc. 36 at 9-12). The employee in Tovar did not sue the insurer under Title VII, but only under the ACA. See Tovar, 857 F.3d at 774 ("Her [Tovar's] complaint charged Essentia [employer] with sex discrimination in violation of Title VII . . . and charged HealthPartners, Inc. [insurer] with discrimination in violation of the ACA.").

[8] See also Klassy v. Physicians Plus Ins. Co., 276 F. Supp. 2d 952, 960 (W.D. Wis. 2003) (no insurer liability under Title VII), aff'd, 371 F.3d 952 (7th Cir. 2004); Baker v. Aetna Life Ins. Co., 228 F. Supp. 3d 764, 770 (N.D. Tex. 2017) (same).

court dismissed the Title VII claim against the insurer, noting it was "not an agent of plaintiff's employer with respect to employment practices, but rather a provider or vendor of services." <u>See</u> <u>id.</u> at *3. We echo the court's doubt that Congress intended Title VII liability to reach third-party private insurers like Highmark. <u>See id.</u> at *5; <u>see also</u> <u>Weyer v. Twentieth Century Fox Film Corp.</u>, 198 F.3d 1104, 1113 (9th Cir. 2000) (employee could not sue administrator of employer's disability policy under Title I of ADA).

In sum, Doe fails to state Title VII, ADA, and PHRA claims against Highmark because Doe does not plausibly allege an employment relationship with Highmark. Doe's allegations do not provide a sufficient basis on which we could find Highmark liable under these employment statutes, because Highmark is not Doe's employer. We therefore dismiss Doe's Title VII, ADA and PHRA claims against Highmark with prejudice. We find the lack of an employment relationship or anything approaching an agency relationship to be dispositive, and therefore do not consider the parties' additional arguments regarding administrative exhaustion.

## IV.    <u>Conclusion</u>

We will grant Commonwealth defendants' motion (Doc. 39) to dismiss as to the PHRA and Pennsylvania constitutional claims and without prejudice as to the federal statutory claims. We will deny Highmark's motion (Doc. 26) to dismiss as to Doe's ACA claims, and grant Highmark's motion (Doc. 26) with prejudice as to the Title VII, ADA, and PHRA claims. We will grant Doe leave to file an amended

complaint in accordance with this memorandum, but will stay the deadline for filing

of that complaint until PEBTF defendants have been served.  An appropriate order

shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     March 31, 2021