IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN DOE,** | : | CIVIL ACTION NO. 1:19-CV-2193 |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| **COMMONWEALTH OF PENNSYLVANIA,** *et al.*, | : | |
| Defendants | : | |

# MEMORANDUM

Plaintiff John Doe alleges 14 claims against several defendants, all arising out of denial of insurance coverage for his gender confirmation surgery. Doe alleges claims against his employer, the Commonwealth of Pennsylvania and its Department of Human Services; the Pennsylvania Employees Benefit Trust Fund and its board and trustees[1] (collectively "PEBTF defendants"); and several defendants representing his insurance company, Highmark Health Insurance.[2] Doe asserts employment discrimination claims under various federal and state statutes, healthcare discrimination under federal law, and claims for violation of both the

---

[1] Plaintiff John Doe names over two dozen defendants in his second amended complaint. (See Doc. 60 at 1). Unless otherwise noted, we refer to PEBTF, its board of trustees, and the individually named trustees as "PEBTF defendants" herein. The named trustees are: Sharon P. Minnich; Randy Albright; Korvin Auch; Jay Gasdaska; Tara Long; Teresa Miller; Jennifer Swails; Erika Swaney; Brenda Warburton; David Fillman; Michael Bodinsky; Richard Caponi; William Einhorn; Dave Henderson; Tom Herman; Dominic Sgro; Matt Yarnell; and Wendell Young IV. (See id. at 1).

[2] Named insurance defendants are Highmark Health Insurance Company; HM Health Insurance Company; Highmark Health; Highmark, Inc.; Highmark Blue Cross Blue Shield; and/or Highmark (collectively, "Highmark"). (See Doc. 60 ¶ 14).

United States Constitution and the Pennsylvania Constitution. The PEBTF defendants move to dismiss the claims against them pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6).

## I. Factual Background & Procedural History

Plaintiff John Doe is a transgender employee of the Commonwealth of Pennsylvania's Department of Human Services in its Office of Mental Health and Substance Abuse Services. (See Doc. 60 ¶¶ 9, 56). Doe has worked for the Commonwealth since 2008. (See id. ¶ 9). Doe carries a diagnosis of gender dysphoria, a medical condition that may require treatments including gender confirmation surgery ("GCS"). (See id. ¶¶ 10-11, 57-61). Doe began receiving gender-affirming health treatment in May 2014. (See id. ¶ 81). His treatment included behavioral health counseling and hormone therapy, and his treatment provider determined that a bilateral mastectomy was clinically appropriate and medically necessary. (See id. ¶¶ 81-82).

According to the second amended complaint, the Commonwealth created the Pennsylvania Employees Benefit Trust Fund ("PEBTF") pursuant to a collective-bargaining agreement in 1988 to provide "employer-sponsored health plan, medical, and related benefits" to Commonwealth employees. (See id. ¶¶ 3, 32-33). PEBTF is governed by a board of trustees comprised of at least 14 members—these members are appointed by either a union or by the Commonwealth's governor. (See id. ¶ 34). The second amended complaint avers PEBTF acts on behalf of the Commonwealth of Pennsylvania to provide, administer, and set policy for health insurance that it provides to state employees. (See id. ¶¶ 35, 37-43). PEBTF also receives "funding

from contributions made by state entities." (See id. ¶ 36). Highmark is a "third-party administrator" of the health plan Doe is enrolled in through his Commonwealth employment. (See id. ¶¶ 14, 88). In 2016 and years prior, PEBTF "excluded coverage under all options available under the PEBTF Medical Plan" for GCS. (See id. ¶¶ 67-74). GCS coverage was expressly excluded from the 2016 plan, as were "charges for any treatment relating to or in connection with" GCS. (See id. ¶¶ 68-69, 72). The 2017 plan retained this exclusion, but also carved out an exception: the exclusion would not apply if excluding coverage would violate the Patient Protection and Affordable Care Act. (See id. ¶¶ 70, 73).

In July 2016, Doe sought authorization for coverage for a mastectomy and related procedures, but "a representative of Highmark" informed Doe that the procedure was excluded. (See id. ¶¶ 89-90). Doe's doctor provided Highmark a letter explaining the medical necessity of these procedures, but nothing changed. (See id. ¶¶ 91-92). In November 2016, a Highmark representative from the "dedicated PEBTF unit" advised Doe that his request was never reviewed "because the Commonwealth and/or PEBTF [did] not offer these benefits." (See id. ¶¶ 93-94). Notably, however, the executive director of PEBTF stated in a November 2016 letter that PEBTF's 2017 plans would cover GCS. (See id. ¶ 96).

On January 3, 2017, another Highmark representative informed Doe that GCS would be covered in his 2017 PEBTF plan. (See id. ¶ 98). Doe again communicated with Highmark and his provider's office to secure necessary documentation for GCS coverage. (See id. ¶¶ 99-100). But a few weeks later, on February 8, 2017, a Highmark representative communicated to Doe that "PEBTF

3

sent coding to reinstate the exclusion" for GCS as the result of litigation pending in the state of Texas. (See id. ¶¶ 101-103). Doe received a letter dated February 22, 2017, from PEBTF's executive director confirming that "PEBTF postponed any changes to its plan benefits pending the outcome of [the Texas] litigation." (See id. ¶ 104).

After the denial, Doe experienced "severe emotional distress in the form of body dysmorphia and immense psychological trauma." (See id. ¶ 105). Doe felt compelled to take sick leave, his social life suffered, and he avoided otherwise-pleasurable activities such as visiting the beach and going to the gym. (See id. ¶¶ 105-117). Doe alleges that the "unequal terms and conditions" of his employment continued until January 1, 2018, when the GCS coverage exclusion was removed. (See id. ¶¶ 67, 118). Doe received GCS in March 2018 with costs (less the deductible) covered by his PEBTF plan. (See id. ¶ 110).

Doe filed the instant lawsuit in December 2019. Following this court's memorandum opinion and order in March 2021, Doe filed a second amended complaint, asserting various statutory and constitutional claims. He seeks compensatory and punitive damages, fees, costs, and interest, as well as equitable and injunctive relief. The PEBTF defendants filed a motion to dismiss, and the motion is fully briefed and ripe for disposition.

## II. Legal Standard

### A. Rule 12(b)(5)

Rule 4 of the Federal Rules of Civil Procedure "sets forth the procedure by which a court obtains personal jurisdiction over the defendant." Ayres v. Jacobs &

Crumplar, P.A., 99 F.3d 565, 569 (3d Cir. 1996). The rule prescribes the process for properly issuing and serving a summons. See FED. R. CIV. P. 4. A party may challenge the method of service or the lack of service of process under Rule 12(b)(5). See FED. R. CIV. P. 12(b)(5); 5B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1353 (3d ed. 2018). In a challenge to sufficiency of service, the burden of proof lies on the party asserting the validity of service. See Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993) (citation omitted). The movant must be specific in its objections and identify the exact manner in which the plaintiff has failed to satisfy the summons or service provision utilized. See 2 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.33[1] (3d ed. 2013).

    **B.**    **Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts

a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### III.  Discussion

Doe asserts federal statutory claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116; and 42 U.S.C. § 1983. He also alleges state statutory claims under the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. AND CONS. STAT. ANN. § 951, *et seq.*, and state constitutional claims under Pennsylvania's Equal Rights Amendment, PA. CONST. art. I, § 28, and Equal Protection Clause, PA. CONST. art. I, § 26. The PEBTF defendants seek to dismiss the entire second

6

amended complaint pursuant to Rule 12(b)(5), and, alternatively, many of the claims pursuant to Rule 12(b)(6).

### A. Uncontested Claims

At the outset, we dispose of Doe's claims pursuant to 42 U.S.C. § 1983 (Counts X, XI, XII), and the state constitutional claims (Counts XIII, XIV) against the PEBTF defendants. After the PEBTF defendants moved to dismiss these claims, (see Doc. 74 at 21-24), Doe failed to respond to or acknowledge this portion of the motion, (see generally Doc. 80). We issued a show-cause order directing Doe to respond, (see Doc. 89), and Doe filed a response agreeing not to oppose the dismissal of Counts X through XIV, (see Doc. 92 ¶¶ 1-3). We will therefore grant the PEBTF defendants' motion to dismiss these counts.

### B. Service on the PEBTF Defendants

The PEBTF defendants argue Doe failed to serve them within the time limit prescribed by Federal Rule of Civil Procedure 4(m). (See Doc. 74 at 9-11). Rule 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

See FED. R. CIV. P. 4(m). Our court of appeals considers "three factors in determining the existence of good cause under Rule 4(m): (1) reasonableness of plaintiff's efforts to serve[;] (2) prejudice to the defendant by lack of timely service[;] and (3) whether plaintiff moved for an enlargement of time to serve." See

Beautyman v. Laurent, 829 F. App'x 581, 583 (3d Cir. 2020) (nonprecedential) (citing MCI Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir. 1995)). If a plaintiff fails to show good cause, the court may exercise its discretion to still grant an extension. See McCurdy v. Am. Bd. of Plastic Surgery, 157 F.3d 191, 196 (3d Cir. 1998).

In March 2021, we granted Doe's motion for substituted service, finding (1) Doe made reasonable efforts to serve the PEBTF defendants several times, but was unsuccessful because of obstacles arising from the ongoing COVID-19 pandemic; (2) the PEBTF defendants were not prejudiced because no discovery deadlines were yet established in this matter; and (3) Doe formally moved for substituted service. (See Doc. 51). Doe thereafter served the PEBTF defendants via certified mail, return receipt requested. (See Docs. 54, 55). We decline the PEBTF defendants' invitation to revisit our previous finding of good cause and authorization for substituted service. (See Doc. 82 at 9-12). PEBTF defendants' motion to dismiss pursuant to Rule 12(b)(5) is denied.

### C. Federal Claims: Title VII and ADA Claims Against the PEBTF Defendants

Doe's remaining federal claims against the PEBTF defendants arise under Title VII, the ADA, the Rehabilitation Act, and the ACA. The PEBTF defendants only seek dismissal of the Title VII and ADA claims at this juncture. (See Doc. 74 at 9 n.7). Doe's Title VII and ADA claims both invoke an employment relationship, so we address them together. Doe pleads his Title VII and ADA claims in the alternative, alleging that PEBTF should be treated as his employer because it

8

controls an aspect of his employment, or because PEBTF acts as the Commonwealth's agent. (See Doc. 60 ¶¶ 42, 45-46).

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title I of the ADA makes it unlawful for a "covered entity to discriminate against a qualified individual on the basis of disability in regard to," among other things, "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A covered entity "means an employer, employment agency, labor organization, or joint labor-management committee." Id. § 12111(2). Title VII and the ADA both include "agents" as potential employers. See 42 U.S.C. § 2000e(b); 42 U.S.C. § 12111(5).

To state a Title VII claim, Doe "must allege an employment relationship with the defendants." Covington v. Int'l Ass'n of Approved Basketball Offs., 710 F.3d 114, 119 (3d Cir. 2013). Our court of appeals looks to a multifactor test from the United States Supreme Court's decision in Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318, 323-24 (1992), to determine the existence *vel non* of an employment relationship. See Covington, 710 F.3d at 119. The Darden holding enumerated 12 factors for assessing a potential employment relationship under traditional agency law, emphasizing that "all incidents of the relationship must be assessed and weighed with no one factor being decisive." Darden, 503 U.S. at 324. These 12 factors principally consider "the hiring party's right to control the manner and means by which [work] is accomplished," including:

9

> . . . the skill required [for the individual's work]; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Id. at 323. While all factors merit consideration, control over the plaintiff's "daily employment activities" is paramount. See Covington, 710 F.3d at 119; see also Faush v. Tuesday Morning, Inc., 808 F.3d 208, 214 (3d Cir. 2015); Plaso v. IJKG, LLC, 553 F. App'x 199, 204 (3d Cir. 2014) (nonprecedential). The existence of an employment relationship under the ADA similarly "focus[es] on the common-law touchstone of control." See Clackamas Gastroenterology Assocs., P. C. v. Wells, 538 U.S. 440, 448-49 (2003) (noting the Equal Employment Opportunity Commission's manual for ADA claims cited Darden factors).

In the case *sub judice*, Doe alleges facts relevant to a single Darden factor, averring PEBTF "establishes and set up the health insurance benefits for Pennsylvania state employees." (See Doc. 60 ¶ 39). None of the other Darden factors are present: Doe does not allege the PEBTF defendants hired him or pay him, allocate work assignments to him, provide tools for him to do his job, dictate the structure or length of his typical workday, require that he work on PEBTF property, or exercise any other type of control over his daily work. Cf. Darden, 503 U.S. at 323. Doe does not allude to any other facts that could cure this deficiency in his opposition brief. Instead, while acknowledging "no single factor" is dispositive

of employment status, Doe doubles down on his theory that "provision of insurance benefits," standing alone, "should be dispositive." (See Doc. 80 at 7-8). We decline to contravene the express admonition of the Supreme Court and our court of appeals on this topic. See Darden, 503 U.S. at 324 (citation omitted); Faush, 808 F.3d at 214; Plaso, 553 F. App'x at 204. We therefore reject this theory without leave to amend, as we can conceive of no facts that would allow it to go forward. Cf. Fletcher-Harlee Corp., 482 F.3d 247, 251 (3d Cir. 2007).

Doe's agency theory, however, is more nuanced. (See Doc. 80 at 8-12). Extrapolating from a footnote in the Supreme Court's decision in City of Los Angeles, Department of Water & Power v. Manhart, 435 U.S. 702 (1978), Doe argues PEBTF can be liable under Title VII because the statute applies to "any agent of a covered employer." (See Doc. 80 at 8 (citing Manhart, 435 U.S. at 717 n.33)). In Manhart, the Court noted that Title VII "primarily govern[s] relations between employees and their employer, not between employees and third parties." Manhart, 435 U.S. at 717 n.33. The Court further stated, however, that an employer cannot "avoid his responsibilities by delegating discriminatory programs to corporate shells." Id. The footnote elaborated that the defendant employer in that case "could not deny that the administrative board was its agent after it successfully argued that the two were . . . inseparable." See id.

Courts applying Manhart's ruling have reached diametrically opposed holdings. Doe relies heavily on the Second Circuit's holding that if a third party "exist[s] solely for the purpose" of allowing an employer to delegate core employment responsibilities, the third party may be "so closely intertwined with"

11

the employer that it can be a proper defendant under Title VII.  See Spirt v. Teachers Ins. Annuity Ass'n, 691 F.2d 1054, 1063 (2d Cir. 1982), judgment vacated *sub nom.* Long Island Univ. v. Spirt, 463 U.S. 1223 (1983).  The Sixth Circuit held precisely the opposite.  Peters v. Wayne State Univ., 691 F.2d 235, 238 (6th Cir. 1982), vacated, 463 U.S. 1223.  Following the Spirt and Peters decisions, the Supreme Court granted *certiorari* in both cases and held that Title VII "prohibits an employer from offering its employees" a discriminatory retirement plan.  Ariz. Governing Comm. for Tax Deferred Annuity & Deferred Comp. Plans v. Norris, 463 U.S. 1073, 1074 (1983) (*per curiam*); see also Erie Cty. Retirees Ass'n v. County of Erie, 220 F.3d 193, 213 (3d Cir. 2000) (drawing on Manhart and Norris to conclude employees stated a claim against county employer under ADEA).  However, the issue of whether benefit fund administrators were proper Title VII defendants was not before the Court, and the Court offered no opinion on the subject.  Neither Doe nor the PEBTF defendants provide us with Third Circuit caselaw exploring this topic, nor has the court's independent research produced such a decision.

The defendant pension fund administrators in Spirt "exist[ed] solely for" provision of retirement benefits to state university employees.  See Spirt, 691 F.2d at 1063.  In our March 2021 opinion, we rejected Doe's attempt to extend the *ratio decidendi* of Spirt to his insurer, Highmark, for two reasons: principally, because Doe alleged Highmark acts merely as a "third-party administrator" of insurance benefits with an arms-length relationship to his employer; and secondarily, because Doe's theory would have considerably expanded Title VII liability to such third-party entities.  (See Doc. 52 at 18-22).  Here, however, Doe alleges facts indicating

12

that PEBTF is "so closely intertwined with" his employer that it can be held liable pursuant to Spirt. See Spirt, 691 F.2d at 1063; (see also Doc. 60 ¶¶ 3, 28-48). Doe alleges PEBTF (1) was created pursuant to the Commonwealth's statutory or constitutional authority, (2) is comprised in part by governor-appointed members, and (3) receives funds "from contributions made by state entities." (See Doc. 60 ¶¶ 3, 32, 34, 36). Perhaps most significantly, Doe alleges PEBTF derives authority from and is tasked by the Commonwealth to act on its behalf regarding state employee health benefits. (See id. ¶¶ 35, 42, 43). These factual allegations, which we must accept as true at the motion to dismiss stage, bring PEBTF squarely within the parameters of Spirt.

We are further persuaded that PEBTF is a proper Title VII defendant by case law in other circuits determining that boards with power delegated by the state are suable entities under Title VII. See, e.g., Williams v. City of Montgomery, 742 F.2d 586, 589 (11th Cir. 1984) (city board was proper Title VII defendant); Boyden v. Conlin, No. 17-CV-264-WMC, 2018 WL 2191733, at *8 (W.D. Wis. May 11, 2018) (same for state employee trust fund); Jimenez v. Laborer's Welfare Fund of the Health & Welfare Dep't of the Constr. & Gen. Laborers' Dist. Council of Chi. & Vicinity, No. 18-CV-07886, 2020 WL 5979653, at *5 (N.D. Ill. Oct. 8, 2020) (same for city welfare fund); Kadel v. Folwell, No. 1:19CV272, 2021 WL 848203, at *8 (M.D.N.C. Mar. 5, 2021) (same for state-created corporation). Additionally, the Manhart and Norris decisions both involved public employers that had delegated pension fund responsibilities to government-created boards or committees. See Manhart, 435 U.S. at 704 n.2, 717 n.33; Norris, 463 U.S. at 1074.

In sum, Doe has alleged plausible Title VII and ADA claims against PEBTF as an entity created by the Commonwealth, partially comprised of Commonwealth-appointed members, and sanctioned by the Commonwealth to establish and modify the healthcare policies for Commonwealth employees. Doe's allegations provide a sufficient basis on which we could find PEBTF liable under these employment statutes. We will therefore deny the PEBTF defendants' motion with respect to Doe's Title VII and ADA claims (Counts I, II).

### D.     PHRA Claims Against the PEBTF Defendants

Doe brings four claims under the PHRA against the PEBTF defendants. Counts III and V allege the PEBTF and its board discriminated against him on the basis of sex and disability, respectively. (See Doc. 60 at 37, 40). Counts IV and VI allege PEBTF's individual trustees aided and abetted this discrimination. (See id. at 38, 40).

The PHRA makes it unlawful for "any employer because of the . . . sex . . . or disability . . . of any individual . . . to otherwise discriminate against such individual . . . with respect to compensation, hire, tenure, terms, conditions[,] or privileges of employment or contract." 43 PA. STAT. AND CONS. STAT. ANN. § 955. Courts generally review PHRA claims under the same standards as Title VII and Title I ADA claims. See Connelly v. Lane Constr. Corp., 809 F.3d 780, 791 n.8 (3d Cir. 2016) (citing Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 317 n.3 (3d Cir. 2000)) (Title VII); Colwell v. Rite Aid Corp., 602 F.3d 495, 499 n.3 (3d Cir. 2010) (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir.1996)) (ADA). Yet the statutes are not identical, and both federal and Pennsylvania cases recognize their distinctions.

See, e.g., Dici v. Commonwealth, 91 F.3d 542, 552 (3d Cir. 1996) (PHRA contemplates aiding-and-abetting liability, while Title VII does not); Weaver v. Harpster, 975 A.2d 555, 568 (Pa. 2009) (PHRA covers employers with four or more employees, while Title VII covers employers with 15 or more employees).

The PHRA includes "agent" within its meaning of "person," see 43 PA. STAT. AND CONS. STAT. ANN. § 954(a), and "person" under certain conditions can mean an "employer," see id. § 954(b). The PHRA further permits aiding-and-abetting liability in certain circumstances for supervisory employees. See Dici, 91 F.3d at 553 (plaintiff's supervisor was proper PHRA defendant); Brzozowski v. Pennsylvania Tpk. Comm'n, 165 F. Supp. 3d 251, 263 (E.D. Pa. 2016), aff'd as modified, 738 F. App'x 731 (3d Cir. 2018) (nonprecedential) (collecting cases). However, our court of appeals has decided the PHRA does not contemplate agency liability. See Koslow v. Commonwealth, 302 F.3d 161, 181 (3d Cir. 2002) (citing Dici, 91 F.3d at 552) ("We have never said 'any person' can be liable under" the PHRA.).

We incorporate our Title VII and ADA Darden analysis, *supra* at 8-10, to conclude that PEBTF may not be liable under the PHRA as Doe's employer. And in contrast to his Title VII agency theory, Doe cannot state a claim for PHRA liability based on PEBTF's alleged agency relationship with the Commonwealth because binding Third Circuit caselaw does not permit agency liability under the PHRA. See Koslow, 302 F.3d at 181. Furthermore, Doe has alleged no facts that would indicate PEBTF, its board, or any of its trustees exercised supervisory power over his employment. We therefore conclude Doe fails to state a claim for aiding-and-abetting liability against the PEBTF trustees pursuant to the PHRA. We will

15

dismiss Doe's PHRA claims against the PEBTF defendants (Counts III, IV, V, VI) without leave to amend.³ Cf. Fletcher-Harlee Corp., 482 F.3d at 251.

### E.   Duplicative Parties

The PEBTF defendants seek dismissal of some of the parties named in Doe's second amended complaint. (See Doc. 74 at 19-21). For many of the claims, Doe names both PEBTF and its board, or the trustees in both their individual and official capacities. As to the trustees, Doe concedes his Section 1983 and Pennsylvania constitutional claims against them, and we have determined the second amended complaint fails to state a claim against them pursuant to the PHRA. Thus, no claims remain against the trustees, and we will dismiss them from the action. Of the remaining claims, Counts I, II, VII, VIII, and IX name PEBTF as well as its board of trustees. The PEBTF defendants seek to have the board dismissed as a party duplicative of PEBTF, which is also sued directly. Doe did not oppose, respond to, or even acknowledge this portion of the PEBTF defendants' motion. (See generally Doc. 80; Doc. 82 at 1-3). We will grant this portion of PEBTF defendants' motion as unopposed.

---

³ Doe failed to substantively respond to the PEBTF defendants' briefing on this area of law, and the court issued a show-cause order in July 2021. (See Doc. 89). Doe's response, while conceding several of his claims, provided a conclusory and contradictory response regarding his PHRA claims. (See Doc. 92). Doe initially states he "opposes the PEBTF and Trustees['] Motion to Dismiss under a PHRA aiding and abetting theory," then avers he "does not oppose the PEBTF and its Trustees' Motion to Dismiss on the PHRA 'aiding and abetting' claim." (See id. ¶¶ 4, 5). Despite PEBTF's reply noting this contradiction, (see Doc. 93 at 2-3), Doe has not amended or otherwise corrected his response.

16

## IV. Conclusion

We will grant as unopposed the PEBTF defendants' motion to dismiss the Section 1983 and Pennsylvania constitutional claims. We will deny the motion as to Doe's Title VII and ADA claims, and grant the motion with prejudice as to the PHRA claims. PEBTF's board of trustees and individual trustees will be dismissed, while PEBTF as an entity will remain. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:   January 26, 2022